333 A.2d 841
Michael BLOFSEN, Appellee,

v.

Richard W. CUTAIAR et al., Appellants.

Supreme Court of Pennsylvania.

Argued Jan. 20, 1975.

Decided March 18, 1975.

William M. Barnes, Schnader, Harrison, Segal & Lewis, Paul C. Madden, James D. Crawford, James J. Leyden, Philadelphia, for appellants; Edward Davis, Philadelphia, of counsel.

William J. Toy, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

This is an appeal from a final decree in equity granting the appellee, Michael Blofsen, pension benefits from the Teamsters Pension Trust Fund of Philadelphia and Vicinity [Pension Fund].[1]

On September 17, 1965, Blofsen, age 63 and a member of the Teamsters Union since 1938, submitted an application for normal retirement pension benefits. In this application, Blofsen indicated he worked for the American Ice Company [American] from 1923 to 1955, and for the Terminal Ice Company [Terminal] from 1955 to the date of the application. The Pension Fund Trustees [Trustees] [2] rejected the application stating Blofsen was

1. The Pension Fund was established by an Agreement and Declaration of Trust, effective December 30, 1957, entered into between various Teamsters Locals in Philadelphia area and employers with whom they had collective bargaining agreements.

2. The Declaration of Trust provided, in accordance with Section 302(c)(5) of the Labor-Management Relations Act of 1947; 29 U. S.C. § 186(c)(5), that the Pension Fund was to be administered by

ineligible for benefits because his employment with Terminal was not as an employee, but as an employer. Blofsen then instituted this action in equity seeking all benefits due him from the Pension Fund, and an evidentiary hearing followed. The chancellor, while holding that Blofsen failed to meet the eligibility requirements established by the Trustees, nevertheless entered a decree nisi granting the requested relief. The chancellor ruled the Trustees, having accepted contributions to the Pension Fund made on behalf of Blofsen, were estopped from invoking the eligibility requirements. Exceptions thereto were later dismissed by a court en banc, and the decree nisi was made a final decree. This appeal was then filed.

The trial testimony [3] established that Blofsen entered the ice delivery industry in 1928 as a truck driver for American. However, by June 26, 1953, Blofsen had clearly lost the status of employee. On that date a certificate was filed with the Prothonotary of Philadelphia County stating that Blofsen and James McCaughan were engaged in the business of hauling and delivering ice under the name of "Terminal Ice Company".[4] From that date until June 20, 1963, when a certificate of incorporation was granted to "Terminal Ice Company, Inc.", it is clear from the testimony that Blofsen's status was that of an employer. Blofsen testified he purchased several trucks from American for use in the business. He admitted having several employees on the payroll. Blofsen signed collective bargaining agreements with the union, representing himself as the "employer". And Blofsen's

an equal number of employer and employee representatives, as Trustees, for those eligible employees whose employers make contributions to the Pension Fund. The Trustees were empowered to adopt a Pension Plan and formulate conditions of eligibility for benefits.

3. Discrepancies between the trial testimony and Blofsen's application for pension benefits are not significant.

4. As early as June 18, 1947, Blofsen signed agreements with the union as a representative of Terminal.

earnings were commensurate with employer status. For example, in 1954, the year after Terminal was formed, he earned nearly twice the wages paid the highest paid laborer in the industry, covered by union contract.

In order to be eligible for normal retirement pension benefits, certain preconditions must be met. One such requirement is the completion of "20 years of Continuous Service".[5] In computing "Continuous Service", provision is made for including employment engaged in both before and after an individual has become covered by the Pension Plan.[6] All employment engaged in prior to an individual becoming covered by the Pension Plan is added to all employment after an individual has become covered, provided the prior employment was pursuant to a collective bargaining agreement to which any union covered by the Pension Plan was a party. However, if a "Break in Service" occurs, the individual loses credit for all work performed prior to the break.

When Blofsen applied for a pension, "Break in Service" was defined as follows:

"(a)  After first Covered Day

An Employee shall be considered to have a Break in Service after his first Covered Day if he is not in Covered Employment for a period of 104 [7] or more consecutive calendar weeks.

---

5.  "Continuous Service" is defined as "the sum of Continuous Past Employment and Continuous Covered Employment, both counted from the most recent Break in Service." In addition, the individual must be at least 57 years of age, have completed three years of continuous service under a collective bargaining agreement and have had at least 400 days of contributions paid into the Pension Fund by a contributing employer on his behalf.

6.  An individual becomes covered by the Pension Plan when he is employed in a capacity for which employer contributions are payable to the Pension Fund in accordance with a Pension Agreement.

7.  By amendment, effective April 4, 1968, this period was extended to 156 or more consecutive calendar weeks.

"(b) Prior to first Covered Day

An Employee shall be considered to have a Break in Service prior to his first Covered Day if his period of Continuous Employment in the Industry as defined in a Collective Bargaining Agreement or by the Union is broken for a period of 104 [8] or more consecutive calendar weeks."

The record indicates that Blofsen did have such a "Break in Service" prior to his first "Covered Day".[9] which could have been no earlier than June 19, 1963.[10] Between June 26, 1953, and June 10, 1963, Blofsen was an employer, associated with Terminal. As only employees can be engaged in "Continuous Employment in the Industry as defined in a Collective Bargaining Agreement or by the Union," Blofsen, as an employer, must be considered to have had a "Break in Service" during that period. Having had a "Break in Service", Blofsen loses credit for all work performed prior to the break and, therefore, fails to have the requisite "20 years of Continuous Service".

Blofsen argues that regardless of whether he is eligible under the Pension Plan, the Trustees, having accepted contributions to the Pension Fund on his behalf without complaint, should be estopped from asserting his non-eligibility. He contends the Trustee's actions constituted a tacit representation that he would be eligible for pension benefits and that he relied upon this representation to his detriment as he felt no need to purchase other retire-

8. See note 7 supra.

9. It is clear that only employees have a "Covered Day" as a "Covered Day" is defined as "[A] day of Employment of an *Employee* with respect to which an Employer Contribution is paid on his account into the Trust Fund." [Emphasis added.]

10. The chancellor found that on June 19, 1963, Blofsen became an employee of the "Terminal Ice Company, Inc." within the meaning of Section 302 of the Labor-Management Relations Act of 1947, 29 U.S.C. § 186.

ment security.[11]   The trial court agreed with this position.

██ Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken. P.L.E. Estoppel § 21. When a party "by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts . . . the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements." *Northwestern National Bank v. Commonwealth*, 345 Pa. 192, 196–197, 27 A.2d 20, 23 (1942). See also *Tallarico Estate*, 425 Pa. 280, 288, 228 A.2d 736 (1967). It is well-established, however, that the burden rests on the party asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence. *Funds for Business Growth, Inc. v. Maraldo*, 443 Pa. 281, 288, 278 A.2d 922 (1971); *Ham v. Gouge*, 214 Pa.Super. 423, 428, 257 A.2d 650 (1969). See also *Albert v. Lehigh Coal and Navigation Company*, 431

11. Blofsen claims contributions on his behalf were made from the inception of the Pension Plan in 1957 until the time when he made application for pension benefits in 1965. However, the record indicates that such contributions commenced no earlier than the fourth quarter of 1962. Cancelled checks established that Terminal made contributions to the Pension Fund on behalf of its employees beginning January 6, 1959. Quarterly Reports, indicating which employees were covered by the contributions, were filed initially for the period covering the second quarter of 1959. Blofsen's name appeared on these Quarterly Reports for the first time in the Quarterly Report for the fourth quarter of 1962. Thus, Blofsen's reliance, if any, existed for no more than the last thirty-six months of a thirty-seven year career as a driver and employer.

418

Pa. 600, 246 A.2d 840 (1968). We rule Blofsen failed to sustain this burden.

The essential elements of estoppel are "an inducement by the party sought to be estopped to the party who asserts the estoppel to believe certain facts to exist— and the party asserting the estoppel *acts in reliance on that belief*." [Emphasis in original.] *Sabino v. Junio*, 441 Pa. 222, 225, 272 A.2d 508, 510 (1971). Instantly, no evidence was introduced demonstrating that Blofsen's actions were in reliance upon the Trustees' representations, rather than as the result of his own judgment. *Northwestern National Bank v. Commonwealth*, supra, 345 Pa. at 197, 27 A.2d at 23. There was no evidence which indicated Blofsen acted any differently than he would have acted had he known he was ineligible for pension benefits. In fact, there was nothing in the record to indicate Blofsen had not secured other retirement security. Under the circumstances, we find no basis upon which to apply the doctrine of equitable estoppel.

Finally, Blofsen contests the validity of the "Break in Service" provision. While trustees of an employee pension fund do possess a large measure of discretion in prescribing conditions of eligibility for benefits, they do owe a fiduciary duty to the employees whom they represent and may neither impose unreasonable conditions of eligibility nor act arbitrarily in determining who is eligible. *Lee v. Nesbitt*, 453 F.2d 1309, 1311 (9th Cir. 1972); *Roark v. Boyle*, 141 U.S.App.D.C. 390, 439 F.2d 497 (1970). Blofsen contends the "Break in Service" provision, which causes forfeiture of all credit for employment prior to the break, unjustly deprives an individual of his hard-earned pension. Citing *Roark v. Boyle*, supra, he argues that eligibility for pension benefits would be more equitable if the eligibility requirements were geared to an individual's "entire contribution history".

We need not address Blofsen's contention for it is clear that, even under the test he proposes, Blofsen had only thirty-six months of "contributory employment".[12]

Decree reversed. Costs on Blofsen.

NIX and MANDERINO, JJ., dissent.