In re INDUSTRIAL CONCERNS,
INC., Debtor.

AMG Resources Incorporated, Allan
Goldstein and Ronald Zorn,
Movants,

v.

Industrial Concerns, Inc., Charles
Barletto and Thomas Metesic,
Respondents.

Bankruptcy No. 02–28591–BM.
Motion No. 02–7332M.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 21, 2003.

David K. Rudov, Esq., Rudov & Stein, Pittsburgh, PA, for Movants.

Robert O Lampl, Esq., Pittsburgh, PA, for Debtor.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

AMG Resources Corporation has brought a motion to dismiss the voluntary chapter 11 petition which was filed in this case on behalf of Industrial Concerns, Inc ("ICI") by its president, Charles Barletto, without obtaining prior authorization of ICI's board of directors. AMG Resources, which owns fifty percent of ICI's outstanding shares of stock, maintains that Barletto lacked authority to file the petition on his own initiative.

ICI and Barletto oppose the motion. They assert that Barletto had not defaulted on his obligations to AMG Resources prior to the filing of the bankruptcy petition and that, in accordance with a settlement agreement involving AMG Resources, he had the "exclusive right to manage the business of ICI".

We conclude that Barletto had defaulted on his obligations to AMG Resources prior to the filing of the bankruptcy petition and therefore no longer had such "exclusive right" when he filed the petition on behalf of ICI. In addition, we conclude that Barletto's "exclusive right to manage the business of ICI" did not in any event empower him to file a chapter 11 petition on behalf of ICI without first obtaining authorization from ICI's board of directors. Based on these determinations, we will dismiss the bankruptcy petition.

## – FACTS –

ICI is in the business of owning and managing real property located in New Castle, Pennsylvania. It leased the property to Industrial Metal Processing, Inc. ("IMP"), a related corporation which processes and recycles scrap metal.

At their inception Charles Barletto owned ninety percent of the outstanding shares of ICI and one hundred percent of the outstanding shares of IMP. The remaining ten percent of ICI's shares were owned by Thomas Metesic.

AMG Resources began selling scrap metal to IMP at some time in 1996 and soon became IMP's largest supplier. Not long thereafter IMP became delinquent on its obligations to AMG Resources.

On January 28, 1997, ICI, IMP, Barletto, AMG Resources and Allen Goldstein, president and board chairman of AMG Resources, executed a stock transfer and management agreement to resolve their differences. Among other things, Barletto agreed to transfer fifty percent of the outstanding shares of ICI and IMP to AMG Resources, which in turn agreed to provide ICI and IMP with administrative, commercial and management services.

AMG Resources and Barletto concurrently executed a shareholders' agreement whereby Barletto transferred fifty percent of the shares of ICI and IMP to AMG Resources. The agreement further provided that the board of directors of ICI and IMP would consist of four persons, two of whom were to be appointed by Barletto and two by Goldstein. Barletto appointed himself and Metesic as directors while Goldstein appointed himself and Ron Zorn.

On February 25, 1998, Barletto filed a voluntary chapter 11 petition in this court. On April 17, 1998, ICI filed voluntary chapter 11 petition. ICI's bankruptcy 11 petition was filed on its behalf by Barletto as its president. Authorization from ICI's

board of directors was neither sought nor obtained prior to the filing. An involuntary chapter 7 petition also was filed against IMP on April 17, 1998.[1]

On September 28, 1998, AMG Resources, AMG Recycling[2], Goldstein, Barletto, ICI, IMP and BECO entered into a written settlement agreement which sought to resolve various claims they had against one another.

Acting individually and on behalf of ICI and IMP, Barletto stipulated that AMG Resources and/or AMG Recycling had a valid claim in the amount of $1,300,000 against IMP for, *inter alia*, inventory, cash and services provided and that IMP would not assert any defenses to the claim in its bankruptcy case. (¶ 1.)

Barletto agreed to purchase existing inventory of AMG Resources located on the site owned by ICI for the sum of $92,000, which was due and payable on or before entry of a final, non-appealable order approving debtors' plan of reorganization. (¶ 5)

Barletto further agreed to pay AMG Resources an additional $250,000. Payments in the amount of $5,000 were due and payable on or before the tenth day of each month for thirty-six consecutive months. A final payment in the amount of $70,000 thereafter was due within thirty days following the thirty-sixth monthly payment. All payments were to be deposited into an account established by AMG Resources at a bank within ten miles of the location of ICI and IMP. (¶ 6.)

If Barletto complied with the above payment obligations, Goldstein, AMG Resources and AMG Recycling agreed to limit their claims against Barletto, ICI, IMP and/or BECO to $1,3000,000. (¶ 7.)

Barletto's failure to pay to AMG Resources when due the final $70,000 balloon payment provided for in paragraph 6 constituted an event of default under the agreement (¶ 10d.)

AMG Resources was to receive a joint and several consent judgment in the amount of $1,3000,000 in its favor and against ICI and IMP in the Court of Common Pleas of Lawrence County, Pennsylvania. AMG Resources would forbear from executing or taking other legal action on the consent judgment, provided that Barletto, ICI and IMP did not default on their obligations arising under the settlement agreement. A prompt judicial sale of all the assets of ICI and IMP could take place at the option of AMG Resources, however, if Barletto defaulted. (¶ 11.)

If and when Barletto fully performed all of his obligations arising under the agreement, within thirty days after receipt of the final balloon payment AMG Recycling would transfer to Barletto all of the shares of ICI and IMP it owned and would cause any board member of ICI and IMP appointed by it to resign. (¶ 15.)

Until and unless Barletto fully performed his obligations arising under the agreement, AMG Resources would continue to own fifty percent of the shares of ICI and IMP and the board of directors of ICI and IMP would be comprised of Barletto, Metesic, Goldstein and Zorn, *"provided, however, that, so long as Barletto has not committed an Event of Default hereunder, he shall have the exclusive right to manage the business of ICI and IMP"*. (¶ 16.)

---

1. Barletto Equipment and Construction Company ("BECO"), another corporation controlled by Barletto, also filed a bankruptcy petition at or about the same time.

2. AMG Recycling is a corporation related to AMG Resources and also is controlled by Goldstein.

It was agreed that time was of the essence with respect to all of the obligations and time periods arising under the agreement. (¶ 17.)

It further was agreed that, as permitted by the bankruptcy court, the parties would forbear prosecution of all pending actions between them and would, to the best of their abilities, maintain the status quo. (¶ 23.)

The settlement agreement contained the entire agreement of the parties and could be amended only by a writing executed on behalf of the parties by their duly authorized officers or representatives. (¶ 25.)

An order approving the above settlement agreement issued on December 16, 1998.

The joint chapter 11 plan filed by Barletto, ICI, IMP and BECO was confirmed on April 22, 1999.

Pursuant to the settlement agreement, AMG Resources established an account at a branch of Sky Bank located in New Castle, Pennsylvania. In addition, a consent judgment in the amount of $1,3000,000 in favor of AMG Resources and against ICI and IMP was entered and recorded in the Court of Common Pleas of Lawrence County.

It is undisputed that Barletto made the required initial payment of $92,000 to AMG Resources. It also is undisputed that a total of thirty-six monthly payments by Barletto in the amount of $5,000 were deposited into the account of AMG Resources at the Sky Bank branch in New Castle.

The first $5,000 installment payment was deposited into the account of AMG Resources on July 2, 1999. The thirty-sixth payment was deposited into its account in June of 2002. A *thirty-seventh* payment was deposited into the account on July 1, 2002. The amount of this latter deposit was $5,000, however, not $70,000. No further payments were ever deposited into the account.

At some time prior to June 18, 1998, counsel to Barletto left a voice mail message for counsel to AMG Resources concerning the possibility of liquidating the above $70,000 balloon payment in $5,000 monthly installments instead of in a lump sum.

Counsel for Barletto and counsel for AMG Resources thereafter had a telephone conversation on June 26, 2002, wherein they discussed the proposal. Counsel to AMG Resources advised counsel to Barletto that he would take the proposal to Goldstein and would attempt to "sell" it to him. He further advised counsel to Barletto that a payment of $5,000 toward the $70,000 balloon payment that was about to become due was better than no payment at all. A thirty-seventh payment in the amount of $5,000 was deposited into the account of AMG Resources a few days later on July 1, 2002.

At some time after June 26, 2002, counsel to AMG Resources presented Barletto's proposal to Goldstein, who rejected it. Goldstein then directed counsel to AMG Resources to take steps to execute on the consent judgment previously entered in the Court of Common Pleas of Lawrence County.

On July 16, 2002, counsel to AMG Resources submitted a praecipe for a writ of execution to the Prothonotary of Lawrence County requesting that a writ be issued directing the sheriff of Lawrence County to execute on the property of ICI and IMP.

Counsel to AMG Resources notified counsel to Barletto on July 17, 2002, that AMG Resources had rejected the proposal to continue paying $5,000 per month until the $70,000 payment was made. Counsel

to AMG Resources instead demanded that Barletto make the final payment in the full amount of $70,00, as provided for in the settlement agreement. He also informed counsel to Barletto that Goldstein had directed that an execution proceeding be commenced against ICI and IMP in light of Barletto's default.

The next day—i.e., on July 18, 2002–, counsel to Barletto sent a fax to counsel to AMG Resources containing another proposal concerning the balloon payment. Counsel to Barletto proposed that, in addition to the $5,000 payment made on July 1.2002, Barletto would make payments of $5,000 in August, September, and October of 2002 and would pay the remaining balance of $50,000 by November 1, 2002.

Counsel to AMG Resources sent a letter to Barletto on July 19, 2002, rejecting the proposal. In the letter he averred that Barletto had voluntarily tendered $5,000 to AMG Resources and stated that Barletto, ICI and IMP had defaulted on their obligations arising under the settlement agreement.

ICI filed a voluntary chapter 11 petition on August 9, 2002, thereby automatically staying the execution proceeding. Barletto brought the petition on behalf of ICI in his capacity as its president. He acted on his own initiative and without notice to or prior authorization by the board of directors of ICI.

The schedules accompanying the petition listed assets with a declared value of $980,200.00 and liabilities totaling $2,217,339.24. AMG Resources was listed as having an unsecured non-priority claim in the amount of $1,2000,000 for "trade debt".

On November 7, 2002, AMG Resources, Goldstein and Zorn brought a motion to dismiss the voluntary petition Barletto had filed on behalf of ICI. The thrust of the motion is that the filing of the chapter 11 petition by Barletto was an *ultra vires* act which was undertaken without proper and necessary authority. It was alleged that Barletto had acted unilaterally and did not obtain authorization from the board of directors of ICI prior to the filing.

An evidentiary hearing on the motion and the opposition thereto of Barletto and ICI was conducted on January 23, 2003.

## – DISCUSSION –

The following issues must be resolved in order to decide AMG Resources' motion to dismiss: (1) whether Barletto defaulted on his payment obligations as set forth in paragraph 6 of the settlement agreement; and (2) if Barletto was not in default, whether he had authority to file a voluntary chapter 11 petition on behalf of ICI on his own initiative and without prior authorization by the board of directors of ICI.

### *Did Barletto Default?*

It is undisputed that: Barletto made the initial payment in the amount of $92,000 to AMG Resources to purchase existing inventory; Barletto made thirty-six monthly payments in the amount of $5,000 starting in July of 1999 and ending in June of 2002; Barletto did not pay $70,000 within thirty days of the date on which the thirty-sixth payment was made; and paragraph 10d of the settlement agreement provides that Barletto's failure to make the required balloon payment when due constituted an event of default.

Whether Barletto defaulted depends in the first instance on *when* the thirty-sixth monthly payment in the amount of $5,000 was made. There is a dispute concerning when it was made.

Barletto asserts that the payment was made on June 27, 2002. If Barletto is correct, he had until July 27, 2002, to make

the $70,000 balloon payment. Under this scenario, AMG Resources breached the settlement agreement before Barletto defaulted when it initiated an execution proceeding against ICI and IMP less then thirty days later on July 17, 2002.

AMG Resources maintains that Barletto breached the settlement agreement before it initiated the execution proceeding against ICI and IMP. It asserts that the thirty-sixth monthly payment of $5,000 was made on June 3, 2002, not on June 27, 2002, and that Barletto failed to make the required $70,000 balloon payment within thirty days thereafter i.e., by July 3, 2002. The only payment Barletto made subsequent to June 3, 2002, was a $5,000 payment on July 1, 2002.

After considering all of the evidence submitted by the parties at the hearing, we conclude that the thirty-sixth monthly payment in the amount of $5,000 was made on June 3, 2002, not on June 27, 2002, and that the required $70,000 balloon payment was not made within thirty days of this date. The bank statement for the account of AMG Resources at the branch of Sky Bank located in New Castle definitively shows that the *only* deposit made into the account in June of 2002 occurred on June 3, 2002. No other deposit was made into the account during that month.

Barletto has put forth various arguments in an attempt to avoid the seemingly inescapable conclusion that he defaulted on his obligations and consequently no longer had "the exclusive right to manage the business of ICI" when he unilaterally filed ICI's chapter 11 petition.

Barletto first maintains that AMG Resources is obligated under the agency doctrine of apparent authority to accept payments in the amount of $5,000 per month until the $70,000 balance is paid in full because counsel for AMG Resources ac-

cepted such a proposal despite having no express authority to do so.

As was previously noted, counsel to Barletto approached counsel to AMG Resources late in June of 2002 and proposed that, instead of paying it in one lump sum, Barletto pay the $70,000 still due at the rate of $5,000 per month until the amount due was paid in full.

Barletto asserts that counsel to AMG Resources *accepted* the proposal despite lacking express authority to do so and stated that he would take it to Goldstein and "sell the idea" to him. Barletto further asserts that counsel to AMG Resources instructed Barletto's counsel to make the initial $5,000 payment. The representation of counsel to AMG Resources that he would "sell the idea" to Goldstein turned out to be untrue. Goldstein rejected the proposal outright when counsel to AMG Resources presented it to him.

 An attorney must have express authority from a client to settle a matter on behalf of the client. *Rothman v. Fillette*, 503 Pa. 259, 264, 469 A.2d 543, 545 (1983). Under the doctrine of apparent authority, however, a settlement agreement nonetheless may be enforced against a principal when a third party reasonably believes that the principal's lawyer had authority to agree to a settlement when the lawyer fraudulently represented that he had such authority. *Id.* If one of two parties in such a situation must suffer, the loss should be borne by the party who placed the lawyer in a position of trust and confidence and thus enabled the lawyer to perpetrate the fraud. *Id.*

 According to Barletto, counsel to AMG Resources accepted the proposed modification of the settlement agreement and misleadingly induced Barletto to reasonably believe that counsel had express authority to accept the proposal on behalf

of AMG Resources when in reality he did not. From this Barletto would have us infer that his proposal is enforceable under the doctrine of apparent authority. If we so conclude, it presumably would follow that Barletto had not defaulted on his payment obligations arising under the settlement agreement because he already had made one agreed-to $5,000 payment when AMG Resources breached the settlement agreement by initiating an execution proceeding against ICI and IMP.

This argument is without merit. It relies on the erroneous assumption that counsel to AMG Resources *accepted* Barletto's proposal to pay the $70,000 balloon payment at the rate of $5,000 per month even though counsel lacked express authority from AMG Resources to accept the proposal.

Counsel to AMG Resources, we find, neither accepted the proposal on behalf of AMG Resources nor held himself out as having authority to do so. Counsel instead indicated only that he would *attempt* to "sell the proposal" to Goldstein—i.e., would present it to Goldstein to see if he would accept it. Moreover, we find that counsel to AMG Resources did *not* instruct or in any way induce Barletto to make the $5,000 payment that occurred on July 1, 2002. Counsel instead merely acquiesced in Barletto's suggestion that Barletto make a $5,000 payment as the first installment. Barletto and his counsel made far more of what counsel AMG Resources said or did than was reasonable under the circumstances.

Barletto next argues that AMG Resources should be equitably estopped from asserting that Barletto defaulted when he failed to make the required $70,000 balloon payment within thirty days of June 3, 2002.

■ As its name implies, equitable estoppel sounds in equity. *Zitelli v. Derma-*

*tology Education and Research Foundation,* 534 Pa. 360, 373, 633 A.2d 134, 139 (1993). It is a doctrine of "fundamental fairness" whose application depends on the facts of a particular case. *Homart Development Co. v. Sgrenci,* 443 Pa.Super. 538, 554, 662 A.2d 1092, 1100 (1995).

■ Its application makes enforceable a promise implied by words, deeds or representations which induce another to justifiably rely to their detriment. *Kreutzer v. Monterey County Herald Co.,* 560 Pa. 600, 607, 747 A.2d 358, 362 (2000). It also prevents one from asserting a position to the prejudice of another which is at odds with a previous position. *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975).

■ Equitable estoppel consists of two elements: (1) inducement; and (2) justifiable reliance on that inducement. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 436, 457 A.2d 502, 503 (1983). The inducement may arise out of one's words or deeds. The conduct that is induced may occur by commission or forbearance, as long as a detrimental change in position results. *Id.,* 500 Pa. at 436, 457 A.2d at 503–04.

■ The party asserting equitable estoppel has the burden of proving these elements by clear, precise and unequivocal evidence. *Blofsen,* 460 Pa. at 417–18, 333 A.2d at 844.

■ Barletto asserts that he was induced by the misrepresentation of counsel to AMG Resources that payment of $5,000 per month was an acceptable means of satisfying Barletto's obligation to make a $70,000 balloon payment. Only after it was too late to make the required $70,000 payment in full within the time period prescribed by the settlement agreement did AMG Resources declare that Barletto

had defaulted and that it had initiated an execution proceeding to satisfy the above consent judgment. From all of this Barletto would have us conclude that AMG Resources is equitably estopped from asserting that Barletto had defaulted with respect to his obligations arising out of the settlement agreement.

This argument also is without merit. Like the previous argument, it rests on the erroneous premiss that counsel to AMG Resources indicated to Barletto's counsel that continued payments in the amount of $5,000 per month were acceptable.

We previously determined that counsel to AMG Resources gave no such indication. Counsel merely indicated that he would take the proposal to Goldstein and find out whether it was acceptable to Goldstein. Counsel did *not* represent or otherwise indicate that Barletto's proposal was acceptable.

As a consequence, nothing counsel to AMG Resources said or did justified a belief on Barletto's part that it was acceptable for him to pay only $5,000 instead of $70,000 within thirty days of the thirty-sixth $5,000 monthly payment. Any harm or prejudice Barletto or ICI suffered as a result of Barletto's failure to pay $70,000 by that date was due to a misunderstanding on the part of Barletto and his counsel. It was not justifiable to believe from anything counsel to AMG Resources said or did that Barletto need not pay the full amount due—i.e., $70,000—by no later than July 3, 2002.

Based on the foregoing, we conclude that by July 3, 2002, Barletto had defaulted on his obligation to make a $70,000 balloon payment within thirty days of the date on which he made the thirty-sixth installment payment of $5,000. In accordance with paragraph 11 of the settlement agreement, AMG Resources was permitted to initiate execution proceedings against

ICI and IMP. Moreover, in accordance with paragraph 6 of the settlement agreement, Barletto no longer had "the exclusive right to manage the business" of ICI when he initiated a chapter 11 proceeding on behalf of ICI.

### Did Barletto Have Authority To File A Voluntary Chapter 11 Petition On Behalf Of ICI Without Obtaining Prior Approval Of Its Board Of Directors?

■ Paragraph 16 of the above settlement agreement reads as follows:

Unless and until Barletto fully performs his obligations under the Agreement, AMG Recycling shall continue to own 50% of the stock of ICI and IMP and the Board of Directors of both corporations shall continue to be Barletto, Goldstein, Ron Zorn and Thomas Metesic, *provided, however, that, so long as Barletto has not committed an Event of Default hereunder, he shall have the exclusive right to manage the business of ICI and IMP.* (Emphasis added.)

Assuming counterfactually that Barletto had not defaulted on his obligations arising under the settlement agreement, did he have authority to file a bankruptcy petition for ICI on his own initiative and without obtaining prior approval of ICI's board of directors?

Barletto insists that he had such authority by virtue of the language of paragraph 16 giving him "the exclusive right to manage the business of ICI". This assertion is without merit.

■ The decision to initiate a voluntary bankruptcy case on behalf of a corporation must be made by those persons having the power of managing the corporation. *Price v. Gurney,* 324 U.S. 100, 104, 65 S.Ct. 513, 515, 89 L.Ed. 776 (1945).

■ It is a longstanding principle that a president or other officer of a corporation cannot on his or her own initiative file a voluntary petition for the corporation. Approval of its board of directors is required. *In re I.D. Craig Service Corp.*, 118 B.R. 335, 336 (Bankr.W.D.Pa.1990) (*citing In re Farrell Realty Co.*, 10 F.2d 612, 614 (W.D.Pa.1925); *also In re Penny Saver, Inc.*, 15 B.R. 252, 253 (Bankr. E.D.Pa.1981)).

The power to manage a business corporation resides in its board of directors. The Pennsylvania Business Corporation Law ("BCL") sets forth general powers that a business corporation has in Pennsylvania. *See* 15 Pa.C.S.A. § 1502(a). Unless otherwise provided for by statute or in a bylaw adopted by shareholders, all such powers are to be exercised by or under the authority of its board of directors. Management of its business affairs is subject to the direction of its board of directors. *See* 15 Pa.C.S.A. § 1721.

■ What a manager or officer of a corporation may do on his or her own initiative on behalf of the corporation is subject to limitation. Under Pennsylvania law, the manager or officer of a corporation has authority to do any act on behalf of the corporation *which is in the ordinary course of the corporation's business. See Gillian v. Consolidated Foods Corp.*, 424 Pa. 407, 411–12, 227 A.2d 858, 860 (1967); *also Kelly, Murray, Inc. v. Lansdowne Bank & Trust Co.*, 299 Pa. 236, 242, 149 A. 190, 192 (1930).

There is nothing in the record created at the evidentiary hearing indicating that the above language of paragraph 16 of the settlement agreement was meant to deviate from this general principal. The provision giving Barletto "the exclusive right to manage the business of ICI" only gave him authority to make any and all decisions pertaining to the ordinary business affairs of ICI without consulting its board of directors.

As we understand it, paragraph 16 did *not* give Barletto authority to do anything on his own initiative which was *outside* the ordinary business affairs of ICI. The parties to the settlement agreement, in other words, did not intend to give Barletto unfettered discretion to act on his own with respect to ICI's *extraordinary* business affairs. They intended instead to give him such discretion only with respect to the ordinary business of ICI. The fact that his right to manage ICI was "exclusive" does not override this distinction.

ICI, it was noted previously, is in the business of owning and leasing real property to others. The filing of a chapter 11 bankruptcy petition is not within the scope of its ordinary business affairs. To the contrary, resorting to a voluntary chapter 11 petition is a drastic departure from ICI's ordinary business affairs. The filing of a voluntary chapter 11 petition has as its presumed purpose the reorganization of a corporation's business affairs by restructuring its existing obligations to creditors which arose in the ordinary course of its affairs. Such action undoubtedly is "extraordinary".

■ As a matter of law, the filing of a voluntary petition is not an action done for the purpose of carrying on the ordinary business of a partnership. *See In re SWG Associates*, 199 B.R. 557, 559 (Bankr. W.D.Pa.1996). The same would be no less true where a business corporation is concerned.

Support for the conclusion that authority for filing a voluntary bankruptcy petition on behalf of a corporation resides in its board of directors is found elsewhere in the BCL. to wit:

Whenever a business corporation is insolvent or in financial difficulty, the

board of directors may, by resolution and without the consent of shareholders, authorize and designate the officers of the corporation to ... file a voluntary petition in bankruptcy.

15 Pa.C.S.A. § 1903. If, in its discretion, the board of directors decides that a voluntary petition is appropriate, it may grant such authority to designated officers of the corporation.

The context in which the above settlement was arrived at supports the conclusion that paragraph 16 was not meant to give Barletto unfettered discretion to file a voluntary bankruptcy petition on behalf of ICI without obtaining prior authorization to do so from its board.

It was noted previously that ICI had previously filed a voluntary chapter 11 petition on April 17, 1998. As in the present case, Barletto signed the petition on behalf of ICI as its "authorized individual". On May 28, 1998, AMG Recycling brought a motion to dismiss the petition. As in the present case, the moving party averred that the bankruptcy filing was not authorized or approved by ICI's board of directors.

A major purpose of the settlement agreement arrived at on September 28, 1998, was to resolve once and for all the scope of Barletto's authority vis-à-vis ICI. Paragraph 16 was intended to define the parameters on Barletto's authority to take action on his own initiative on its behalf. It not plausible that the issue underlying the motion to dismiss in that case was left unresolved and was postponed until Barletto might see fit to file another voluntary bankruptcy petition on behalf if ICI. As we have indicated, one purpose of paragraph 16 was to *restrict* Barletto's exclusive right to manage ICI's business affairs to matters arising in the ordinary course of its business.

Based on the foregoing, we conclude that Barletto had previously defaulted on his obligations to AMG Resources as set forth in the settlement agreement when he unilaterally filed a voluntary bankruptcy petition on behalf of ICI. As a consequence, AMG Resources was entitled to initiate an execution proceeding against ICI and IMP and by then Barletto no longer had exclusive authority to manage ICI's business affairs. To the extent Barletto still retained such an exclusive right, it was limited to managing ICI's ordinary affairs. He had no authority to file a voluntary bankruptcy petition on its behalf without first obtaining authorization to do so from its board of directors, which he neither sought nor obtained. Because Barletto lacked authority to file the voluntary petition in this case, the petition will be dismissed.