IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glorine Wilson,                          :
                                         :
                    Petitioner           :
                                         :
          v.                             :   No. 834 C.D. 2019
                                         :   Submitted:  December 20, 2019
Workers' Compensation Appeal             :
Board (School District of                :
Philadelphia),                           :
                                         :
                    Respondent           :


BEFORE:    HONORABLE P. KEVIN BROBSON, Judge[1]
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 19, 2021


          Glorine Wilson (Claimant), proceeding *pro se*, petitions for review of
an order of the Workers' Compensation Appeal Board (Board) that affirmed a
decision of the Workers' Compensation Judge (WCJ) denying Claimant's claim
petition seeking indemnity benefits on the basis it was time barred by Section 315
of the Workers' Compensation Act (Act)[2] and denying her request for payment of
medical bills as either moot or unrelated to the accepted work injury.  Claimant
contends that the WCJ's decision is not supported by substantial evidence and asserts

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson
became President Judge.

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §602.

that her claim petition was timely filed and her medical bills are related to the work injury. For the reasons that follow, we affirm the denial of indemnity benefits as untimely, but we reverse the denial of medical expenses.

## I. Background

Claimant sustained a work-related injury on April 11, 2014, during the course and scope of her employment as a substitute teacher for the School District of Philadelphia (Employer). On May 2, 2014, Employer issued a medical-only notice of compensation payable (medical-only NCP), by which Employer agreed to pay for Claimant's medical treatment for the work injury, described as a contusion of the head, soft tissue injury. WCJ's Opinion, 6/12/18, Finding of Fact (F.F.) No. 1; Certified Record (C.R.) at 223.[3]

On May 8, 2017, Claimant filed a claim petition against Employer and its third-party administrator, PMA Management Corp. (PMA). F.F. No. 2; C.R. at 7-9. Therein, Claimant described her injury as: "Contusion: face, over the eyes and head {soft tissue} blurry vision," with "[o]ngoing eye blurriness. Eye, face and forehead pain and spasm." F.F. No. 2; C.R. at 8. Claimant sought compensation for lost wages and unpaid medical bills.

Employer filed a timely answer admitting it accepted an injury by medical-only NCP, but denying the remainder of the allegations. Employer raised an affirmative defense that the claim for indemnity benefits was time barred by the

---

[3] Because the Certified Record was filed electronically and was not paginated, the page numbers referenced in this opinion reflect electronic pagination.

2

statute of limitations. The matter was assigned to a WCJ, who held pretrial[4] and evidentiary hearings.

Before the WCJ, Claimant testified and presented evidence in support of her claim. The WCJ summarized the evidence presented and made the following relevant findings. Claimant testified that she was a retired employee who returned to work for Employer as a substitute teacher. Claimant testified that she was injured on April 11, 2014, when she was struck in the left eye, forehead, and front of her head with a "loaded bookbag" by a student. F.F. No. 6a; C.R. at 7.

With regard to medical expenses, Claimant sought payment of a $950 medical bill from Thomas Jefferson University Hospitals for emergency room treatment at Wills Eye Hospital[5] on April 14, 2014. Claimant also sought reimbursement of six copayments for follow-up ophthalmology services. The six copayments, in the amount of $10 each, were for ophthalmology treatment received from Adam DeBusk, D.O. (Dr. DeBusk), of Wills Eye Hospital and Steven Orlin, M.D. (Dr. Orlin), of the Scheie Eye Institute between January 2015 and October 2017. F.F. Nos. 6b, 12a-f. Claimant testified that she sought payment from PMA in 2015 for these expenses, but PMA's claims adjuster "denied everything." F.F. No. 6c; C.R. at 107. As a result, Claimant submitted the ophthalmology bills to her personal insurance carrier, and she made copayments on those bills. F.F. No. 6c.

---

[4] At the pretrial hearing in June 2017, Claimant asserted that she was denied medical services at the workers' compensation clinic and treated with her own doctors. Claimant averred that her personal insurance covered her treatment, not workers' compensation, and that she made copayments, for which she sought reimbursement. Claimant also asserted that she had been out of work since 2016. Employer's counsel moved to dismiss the indemnity portion of her claim as untimely. The WCJ provided Claimant with 30 additional days to seek advice of counsel and thereafter granted additional continuances at Claimant's request. F.F. Nos. 3-5; C.R. at 75, 78.

[5] Claimant clarified that the emergency treatment was at Wills Eye Hospital, but the service was billed by its parent institution, Thomas Jefferson University Hospitals. F.F. No. 6b.

3

Claimant testified that she sought ophthalmology treatment due to blurriness and difficulty reading with her left eye and head pain on the left side. She testified that she noticed these symptoms shortly after the work incident and reported these symptoms during her emergency room visit. F.F. No. 6d. Claimant testified that she still had a "little bit of the lump" over her left eye from the work incident and suffers intermittent spasms on the left side of her head. F.F. No. 6e. Prior to the work incident, Claimant was prescribed glasses and had dry eyes, but she denied having blurry vision or reading difficulties beforehand. F.F. No. 6f, 6g; C.R. at 117.

In support, Claimant submitted an October 22, 2017, medical report of Dr. DeBusk. In the report, Dr. DeBusk indicated that he saw Claimant for a follow-up visit for a visual disturbance secondary to a history of traumatic brain injury. The doctor opined that Claimant has a convergence insufficiency. He prescribed an MRI scan and reading glasses. However, the report did not reference the work incident or provide an opinion as to causation. F.F. No. at 14.

Employer's counsel admitted responsibility for the April 14, 2014, emergency room bill, but asserted that its claims adjuster was insisting on the "correct forms" before releasing the payment. In a later proceeding, Employer's counsel advised that the emergency room bill was paid on February 7, 2018, which Claimant confirmed. F.F. Nos. 9, 15.

With respect to her indemnity claim, Claimant testified she was out of work for a few days after the work incident. She stopped working for Employer in June 2015. Claimant calculated lost wages in the amount of $17,473.69 for 2014 and $6,214.26 for 2015. She testified that she never received lost wages from Employer. Claimant never advised Employer she was not returning to work due to

4

blurred vision or reading problems. As a substitute teacher, Claimant could select when she wanted to work. F.F. No. 6h-6l.

With regard to the timeliness of her claim petition, Claimant testified that she accessed a claim petition form (LIBC-362 form) from the Department of Labor and Industry's (Department) website. She did not submit her claim petition through the Workers' Compensation Automation and Integration System (WCAIS).[6] Aware of the statute of limitations, Claimant testified that she completed the form during the first week of April 2017 and printed a copy for her records. However, Claimant was not sure whether she electronically submitted the form. She did not obtain a receipt regarding the filing. She followed up several weeks later with the Department's Bureau of Workers' Compensation (Bureau) and learned that her claim petition was not received. A Bureau representative suggested making a copy of the completed claim petition and mailing it to the Bureau, which Claimant did. Although Claimant testified that she mailed her claim petition at the end of April 2017, the envelope bore a United States Postal Service postmark of May 8, 2017. Other than the copy she made for herself, Claimant offered no other documentation regarding her initial filing. F.F. No. 8a-e.

Based on the testimony and evidence provided, the WCJ determined that Claimant failed to meet her burden of proof. With regard to medical expenses, the WCJ found that Employer paid the emergency room bill during the course of proceedings rendering this portion of her claim moot. With regard to the six copayments, Claimant's evidence did not establish a causal connection between the accepted work-related injury and her alleged vision issues. The accepted injury was described as a head contusion, soft tissue injury and not an injury to the left eye.

---

[6] The WCAIS is the Department's web-based system that enables users to file petitions, applications, forms, and other documents online.

5

Claimant's medical evidence, even if accepted as credible, did not reference the 2014 work incident or provide an opinion as to causation. Claimant did not establish that any medical expenses related to the accepted injury were not paid. F.F. Nos. 18-20.

With regard to the indemnity claim, the WCJ found that Claimant filed the claim petition on May 8, 2017, more than three years after the date of injury. Claimant offered no evidence to support the filing of a petition before the expiration of the statute of limitations. There was no evidence that Employer intentionally or unintentionally lulled Claimant into a false sense of security to toll the statute of limitations. Thus, the WCJ determined her indemnity claim was time barred. F.F. No. 17.

By decision and order circulated on June 12, 2018, the WCJ denied Claimant's claim petition upon determining that she failed to meet her burden of proof regarding the payment of medical expenses and her claim for indemnity benefits was time barred. From this decision, Claimant appealed to the Board, which affirmed. Claimant now petitions this Court for review.[7]

## II. Issues

On appeal, Claimant argues that the WCJ's decision is not supported by substantial evidence. Claimant contends that her claim petition should be treated as timely filed based on her earnest attempts to file it electronically the first week in April 2017. She also maintains that her medical expenses are related to her work

---

[7] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Department of Transportation v. Workers' Compensation Appeal Board (Clippinger)*, 38 A.3d 1037, 1042 n.3 (Pa. Cmwlth. 2011).

6

injury and Employer failed to pay her medical expenses without adequate justification.

### III. Discussion
### A. Indemnity Claim - Timeliness

Section 315 of the Act, 77 P.S. §602, provides that all claims for workers' compensation shall be forever barred, unless, within three years after the injury, the parties agree to compensation or one of the parties shall have filed a petition. *Guthrie v. Workers' Compensation Appeal Board (Keystone Coal Co.)*, 767 A.2d 634, 636 (Pa. Cmwlth. 2001). A filing by electronic submission is deemed complete "*upon receipt* at the electronic address and in a format as prescribed by the Department . . . ." 34 Pa. Code §131.11(a)(2) (emphasis added). A filing by mail is deemed complete "upon deposit in the United States mail, properly addressed, postage or charges prepaid, *as evidenced by . . .* [*a*] *United States Postal Service postmark*." 34 Pa. Code §131.11(a)(3)(i) (emphasis added).

However, the statute of limitations may be tolled where payments of compensation have been made. 77 P.S. §602; *Westinghouse Electric Corp./CBS v. Workers' Compensation Appeal Board (Korach)*, 883 A.2d 579, 586 (Pa. 2005). In order to toll the limitations period of Section 315, the claimant must prove that payments of compensation were made within three years of filing the claim petition and that such payments were made by the employer with the intent that they be in lieu of workers' compensation under an equitable estoppel theory.[8] *Westinghouse*,

---

[8] As our Supreme Court explained:

> Equitable estoppel arises in the workers' compensation arena when an employer, "by [its] acts, representations, or admissions, or by [its] silence when [it] ought to speak out, intentionally or through

**(Footnote continued on next page…)**

7

883 A.2d at 586; *Schreffler v. Workers' Compensation Appeal Board (Kocher Coal Co.)*, 788 A.2d 963, 971 (Pa. 2002). The controlling determination is the intent with which the payments were made. *Schreffler*, 788 A.2d at 970; *Golley v. Workers' Compensation Appeal Board (AAA Mid-Atlantic)*, 747 A.2d 1253, 1256 (Pa. Cmwlth. 2000). Merely paying bills submitted by a claimant does not establish wrongdoing. *Westinghouse*, 883 A.2d at 586; *Golley*, 747 A.2d at 1256. The claimant must prove that the actions relied on reasonably lulled her into a false sense of security. *Westinghouse*, 883 A.2d at 586; *Golley*, 747 A.2d at 1256.

Upon review, substantial evidence supports the WCJ's finding that Claimant did not file her claim petition until May 8, 2017, which is beyond the three-year statute of limitations from the April 11, 2014 date of injury. Although Claimant testified that she attempted to timely file her claim petition electronically the first week of April 2017, she conceded her efforts likely failed because the Department never received it. C.R. at 151-53, 159. Claimant did not have a receipt for the electronic submission. C.R. at 154. Ultimately, Claimant mailed a copy of her claim

---

culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that [she] will be prejudiced if the former is permitted to deny the existence of such facts." *In re Estate of Tallarico*, [228 A.2d 736, 741 (Pa. 1967)]. *Accord Northwestern National Bank v. Commonwealth*, [27 A.2d 20 (Pa. 1942)]. The essential elements of estoppel are "an inducement by the party sought to be estopped to the party who asserts the estoppel to believe certain facts to exist—and the party asserting the estoppel *acts in reliance on that belief*." *Blofsen v. Cutaiar*, [333 A.2d 841, 844 (Pa. 1975)] (emphasis in original). It is well established that "in order for the [c]laimant to avail [herself] of estoppel under the Act, [she] must prove that the [actions] relied on must have reasonably lulled [her] into a false sense of security. . . ."

*Westinghouse*, 883 A.2d at 586.

8

petition to the Department. Although Claimant believed that she mailed her claim petition to the Department at the end of April 2017,[9] the envelope bore a United States Postal Service postmark date of May 8, 2017. C.R. at 9, 156.

Claimant offered no testimony to toll or extend the statute of limitations by equitable estoppel. Claimant testified that she did not receive any payments for lost time and Employer did not pay for her medical expenses, despite her repeated attempts to obtain payments. She did not testify that Employer's actions intentionally or unintentionally deceived her or somehow lulled her into a false sense of security sufficient to toll the statute of limitations. We, therefore, conclude that the WCJ properly determined that Claimant's claim for indemnity benefits was barred by the statute of limitations.

### B. Medical Expenses

When an employer issues a medical-only NCP, it acknowledges a work injury and agrees to pay for medical expenses. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015). Pursuant to Section 301(c)(1) of the Act, 77 P.S. §411(1), an employer is only liable to pay for a claimant's medical expenses that arise from and are caused by the work-related injury.

Where "a claimant receives medical treatment for new symptoms that allegedly arise from the compensated injury, and the employer refuses to pay the associated bills, the burden of establishing that the symptoms and treatments are related to the compensable injury turns on whether the connection is **obvious**."

---

[9] We note that any postmark after April 11, 2017, would have been untimely.

9

*Kurtz v. Workers' Compensation Appeal Board (Waynesburg College)*, 794 A.2d 443, 447 (Pa. Cmwlth. 2002) (emphasis in original). As we explained:

> If the new symptoms and the compensable injury are obviously related, and benefits have not been terminated, then the claimant will benefit from the presumption that the new symptoms are related to the compensable injury and, thus, [her] employment, and it will be the burden of the employer to prove that the new symptoms complained of are unrelated to the compensable injury. If, however, the connection is not obvious, then the burden will be on the claimant to establish the connection through unequivocal medical testimony.

*Kurtz*, 794 A.2d at 448.

"An 'obvious' connection 'involves a nexus that is so clear that an untrained lay person would not have a problem in making the connection between' the new symptoms and the compensated injury; the new symptoms would be a 'natural and probable' result of the injury." *Kurtz*, 794 A.2d at 447-48 (quoting *Tobias v. Workmen's Compensation Appeal Board (Nature's Way Nursery, Inc.)*, 595 A.2d 781, 784 (Pa. Cmwlth. 1991)). "This discernment often involves a 'natural and probable' development . . . and could sometimes involve an immediacy of occurrence such as an immediate back injury following heavy lifting." *Tobias*, 595 A.2d at 784-85. The causal connection may be obvious where the claimant experiences pain in the same body part as the original work injury. *Haslam v. Workers' Compensation Appeal Board (London Grove Communication)*, 169 A.3d 704, 710 (Pa. Cmwlth. 2017); *Kurtz*, 794 A.2d at 448; *but see Moyer v. Workers' Compensation Appeal Board (Pocono Mountain School District)*, 976 A.2d 597, 599 n.3 (Pa. Cmwlth. 2009) ("[T]he causal link is not obvious if a claimant has a pre-existing condition related to the same body part the claimant alleges was injured at work.").

For example, in *Kurtz*, the employer accepted responsibility for the claimant's head injury, which was described as "a grade two concussion with retrograde amnesia and severe paracervical spasms." *Kurtz*, 794 A.2d at 445. More than a year later, the claimant sought medical treatment for pain that emerged "in the area of the original injury." *Id.* The employer refused to pay for his treatment. *Id.* at 446. The claimant sought review with a WCJ, who ruled for the employer upon determining that the claimant failed to meet his burden of proving, "by unequivocal medical evidence, that his current condition was causally related to his work injury." *Id.* at 447. On appeal to this Court, the claimant argued that his new symptoms, which included dizziness, headaches and a burning sensation in the "same area as his original head pain" – "just two inches from the scar left by his surgery" – were "obviously related to his original work-related injury," and the burden should be on the employer "to establish that the symptoms were unrelated to the original injury." *Id.* at 448. We agreed and opined: "It is difficult to imagine that similar pain appearing in such close proximity to the area of the original injury is not a natural and probable result of the original injury and, therefore, obviously related to such injury." *Id.* Consequently, we determined that it was the employer's burden to prove that the claimant's new symptoms were unrelated to the original compensable work injury. *Id.* The employer failed to present substantial, competent medical evidence to sustain its burden in this regard. *Id.* at 449. Thus, we reversed and ordered the employer to pay the claimant's medical expenses. *Id.*

Here, Claimant sought payment/reimbursement for medical bills that she alleged were connected to the work injury. She submitted a $950 bill for emergency room treatment at Wills Eye Hospital on April 14, 2014, and documentation for six $10 copays for treatment received thereafter. C.R. at 202,

11

204-10. During the WCJ proceedings, Employer paid the emergency room bill,[10] thereby rendering this issue moot. F.F. Nos. 6(b), 9, 15, 16; C.R. at 165-66.

As for the six copayments, these payments were made to Penn Medicine Department of Ophthalmology, Penn Eye Care Scheie Eye Institute, and Neuro-Ophthalmology (Dr. DeBusk) for treatment related to her left eye provided between January 6, 2015, and October 17, 2017. F.F. No. 12a-f; C.R. at 163, 204-10. The WCJ determined that the connection between Claimant's head contusion sustained in the April 11, 2014 work incident and subsequent treatment for her left eye was not obvious, and placed the burden on Claimant to prove the connection. In this regard, the WCJ erred.

When the record evidence is viewed cumulatively, it is hard to fathom that Claimant's left eye issues are not related to the compensable work injury. Employer accepted liability for Claimant's April 11, 2014 injury by issuing a medical-only NCP, which described the part of the body injured as "head (soft tissue)" and the nature of the injury as "contusion." C.R. at 223. Significantly, Employer described Claimant's injury as "hit with backpack *above left eye*." C.R. at 223 (emphasis added).

Days after the incident, Claimant sought emergency room treatment for her injury from Wills Eye Hospital – a hospital specializing in eye treatment – for pain and blurriness in her left eye. C.R. at 111. She testified that the work injury caused bruising, swelling, and a big bump just above her left eye; Claimant still has a residual lump. C.R. at 114. A few months after the incident, Claimant followed up with Drs. DeBusk and Orlin for treatment related to her left eye. Dr. DeBusk reported that he saw Claimant for a "follow-up visual disturbance thought to be

---

[10] The WCJ admonished Employer and its carrier for the delay in paying this bill, which was obviously connected to the work injury, based on a paperwork formality. *See* C.R. at 166-67.

12

secondary to her history of traumatic brain injury." C.R. at 212. Claimant's new symptoms included blurred vision, difficulty reading, pain, and intermittent spasms in the left eye. C.R. at 114-15. These symptoms are in the same area as the original injury. Claimant did not experience any of these symptoms before the work incident. C.R. at 117.

Under the circumstances, an untrained layperson would not have a problem in making the connection between the new symptoms of blurred vision, difficulty reading, pain, and intermittent spasms in her left eye after being forcefully struck just above the left eye with a backpack full of books. We, therefore, conclude that the causal connection between Claimant's new symptomology and compensable injury is obvious. *See Kurtz*; *see also Haslam*, 169 A.3d at 710 (obvious where compensable injury described right and left foot fractures and new symptoms consisted of a pain condition in the same body parts); *DTE Energy Co., Inc. & Old Republic Insurance Co., Petitioners v. Workers' Compensation Appeal Board (Weatherby)* (Pa. Cmwlth., No. 418 C.D. 2020, filed January 28, 2021) (obvious connection between the accepted leg/back injury and subsequent treatment for back pain).[11]

Because of the obvious nature of the connection, Claimant was entitled to a presumption of work-relatedness[12] and the burden fell on Employer to prove that the treatment was not related to the original injury. *See id.* Employer offered no

---

[11] Section 414(a) of this Court's Internal Operating Procedures authorizes the citation of unreported panel decisions issued after January 15, 2008, for their persuasive value, but not as binding precedent. 210 Pa. Code §69.414(a).

[12] But for the presumption, we agree that Claimant's medical evidence fell short of establishing a causal connection. Dr. DeBusk's report did not reference a work incident and did not provide a medical opinion connecting Claimant's left eye issues to the head contusion. C.R. at 212.

13

medical evidence to rebut this presumption. Thus, we conclude that the WCJ erred in concluding that Employer was not responsible for medical expenses related to Claimant's compensable work injury.

## IV. Conclusion

Accordingly, we affirm the order of the Board insofar as it upheld the denial of indemnity benefits, but we reverse the denial of medical expenses. Employer is ordered to pay Claimant's medical expenses associated with the treatment of her ongoing symptoms arising from the April 11, 2014 work injury.

_____
MICHAEL H. WOJCIK, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Glorine Wilson,                             :
                                            :
                    Petitioner              :
                                            :
            v.                              :   No. 834 C.D. 2019
                                            :
Workers' Compensation Appeal                :
Board (School District of                   :
Philadelphia),                              :
                                            :
                    Respondent  :

# **O R D E R**

AND NOW, this 19th day of March, 2021, the order of the Workers' Compensation Appeal Board, dated April 30, 2019, is AFFIRMED IN PART, insofar as it upheld the denial of Glorine Wilson's (Claimant) claim for indemnity benefits and REVERSED IN PART, as to the denial of her medical expenses. The School District of Philadelphia is ordered to pay Claimant's medical expenses associated with the treatment of her ongoing symptoms arising from the April 11, 2014 work injury.

_____
MICHAEL H. WOJCIK, Judge