## Louchheim, Appellant, *v.* Philadelphia.

*Municipalities—Municipal contracts—Competitive bidding—Act of May* 23, 1874, *P. L.* 230.

Private negotiations between municipal authorities and a successful bidder for a city contract, through which the terms and conditions of the competitive bids are so modified and changed that the successful bidder becomes in fact the lowest bidder, are not within the spirit and purpose of the Act of May 23, 1874, P. L. 230. The proper method for the municipal authorities to pursue, if convinced that the best interests of the city demand it, is to set aside all of the bids, re-advertise and secure another open competitive bidding, when all of the bidders will be on an exact equality.

Argued Jan. 21, 1907. Appeal, No. 188, Jan. T., 1906, by plaintiffs, from decree of C. P. No. 2, Phila. Co., March T., 1906, No. 1,941, dissolving special injunction in case of Jerome H. Louchheim and Walter C. Louchheim v. City of Philadelphia, John Weaver, Mayor of the said city, Thomas L. Hicks, Director of Public Works, S. B. Norcross and N. Perry Edmund, copartners, trading as Norcross & Edmunds. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Bill in equity for an injunction. Before SULZBERGER, P. J. The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree dissolving special injunction.

*M. Hampton Todd*, with him *Samuel K. Louchheim*, for appellants.—The award was not made in accordance with the act: Mazet v. City of Pittsburg, 137 Pa. 548; Ryan v. Ashbridge et al., 10 Pa. Dist. Rep. 153.

*Ernest Lowengrund*, with him *James Alcorn*, assistant city solicitor, and *John L. Kinsey*, city solicitor, for appellee.—The director of public works, without fraud and in the ex-excise of a sound discretion, having awarded the contract to the bidder deemed the lowest responsible one, the execution of the contract should not be enjoined: Findley v. Pittsburg, 82 Pa. 351; Douglass v. Com., 108 Pa. 559; Com. v. Mitchell, 82 Pa. 343; Carrol v. Phila., 183 Pa. 55; Paving Co. v. Phila., 164 Pa. 477; Schuck v. Reading, 186 Pa. 248; American Pavement Co. v. Wagner, 139 Pa. 623.

OPINION BY MR. JUSTICE ELKIN, May 6, 1907:

The appellants seek to restrain the appellees by injunction from executing and delivering a contract for filter materials and collectors for the Torresdale filters, to the firm of Norcross & Edmunds. While the appeal raises several questions of a collateral nature, on which we express no opinion, the decisive question involved is one of law, and within narrow limits.

In 1905 the then director of public works advertised for bids for the furnishing of filtering materials and collectors for the Torresdale filters, and on September 6 of that year bids were received from seven different bidders. They were opened by the director in the presence of the bidders and scheduled according to the usual method of the department. It was determined that the three lowest bidders, calculated upon the estimate of the materials to be furnished, were as follows: Pepper & Bowie, $310,996.05; Jerome H. Louchheim, $328,194.48; Norcross & Edmunds, $336,589.42. In the formal notice to bidders it was suggested that bids by letter, or on detached sheets not forming part of the printed proposal and specifications, would not be considered formal, and that incomplete, conditional or obscure proposals could be rejected. The evident purpose of the notice was to put all bidders on an equality so that open and honest competition

should obtain in the awarding of the contract. On December 9, 1905, Pepper & Bowie, with the consent of the city, withdrew their bid, and were no longer considered competitors. All of the other bidders, with the exception of Norcross & Edmunds and Louchheim, had their respective certified checks returned to them and retired from the competition. Louchheim was the lowest bidder, and as the testimony shows frequently requested the director to take action on the bids submitted and award the contract. The director who had advertised for and received the bids resigned on March 6, 1906, and his successor in office then took up the question of awarding the contract. After some negotiations between the director and the firm to which the contract was awarded, the original bid submitted in September, 1905, was modified, and the contract was awarded to them for a sum amounting on the estimate of materials to be furnished to $302,936.33. The bid when thus reduced was lower than that of Louchheim.

The learned counsel for appellants contend that under these facts there was no such open competitive bidding when the award was made as is required by the act of assembly, and the municipal ordinances. The Act of May 23, 1874, P. L. 230, provides that all work and materials required by the city shall be furnished under contract to be given to the lowest responsible bidder under such regulations as shall be prescribed by ordinance. The city councils, in order to make effective the legislative requirement, passed the ordinances of May 10, 1876, July 5, 1877 and December 26, 1882, in which it was ordained, in substance, that when work, materials and supplies, are required for the city, bids shall be asked for by advertisement, and when received they shall be opened and the contract awarded to the lowest responsible bidder in the presence of the head of the department. It is perfectly clear that the legislative and municipal intent in the awarding of such contracts was that there should be open and honest competition in order that fair prices should be secured and the city protected from collusive bidding as well as favorite bidders. This rule was announced in Mazet v. Pittsburg, 137 Pa. 548, in which Mr. Justice STERRETT, who delivered the opinion of the court, said : " It cannot be doubted that the true intent of the act of

1874, and the ordinances passed in pursuance thereof, regulating the awarding of public contracts, is to secure to the city the benefit and advantage of fair and just competition between bidders, and at the same time close, as far as possible, every avenue to favoritism and fraud in its varied forms." This is a wise and wholesome rule which should always prevail in the letting of such contracts. In the present case the contract, it is true, was awarded at a sum below the lowest bidder in the open competition, but it was so clearly the result of private negotiations between the director and the successful contracting firm, without regard to the conditions of the open competitive bidding and the requirements of the act of assembly and the municipal ordinances, that the award cannot be sustained without striking down all those safeguards which the legislature, the courts and the city have thrown around the letting of these contracts. If the director had the power to enter into private negotiations with a contracting firm for the purpose of reducing its original bid submitted at the time of the open competition, it would necessarily follow that he would have the same power to allow the bidder to increase the amount of his bid submitted at the public letting. If such a rule is to be established it must be held to work both ways, and this would lead to favoritism and fraud in its varied forms which the courts have said must not be allowed. It is obvious that such a rule would lead to a disregard of those wholesome limitations which the legislature and the courts have imposed on the awarding of contracts under the act of 1874, and would submit this whole question to the discretion of the director. We do not doubt that the director in this instance acted in entire good faith, and did what he believed to be for the best interests of the city, but the question involved is not one of good faith on the part of the head of the department, but of power in that official in the exercise of his discretion to disregard the plain mandate of the law. There was only one safe rule to follow in this case, and that was to observe the requirements of the statutes and the ordinances regulating the awarding of the contract. Private negotiations between a director and a successful bidder through which the terms and conditions of the competitive bids are modified or changed, resulting either to the advantage or disadvantage of the city, are not within the spirit

and purpose of the law.    The proper method for the director to have pursued, if convinced that the best interests of the city demanded it, was to set aside all of the bids, readvertise and secure another open competitive bidding when all of the bidders would have been on an exact equality.    We, therefore, hold that the contract was not awarded according to law and sustain this bill for that reason.

In deciding that the contract was improvidently awarded, it must not be understood to indicate that it should have been awarded to any other bidder, for clearly, the director had the power, if the facts warranted it, to set aside all bids, but this question is not before us, and we express no opinion on it.

This view of the law being conclusive of the controlling question raised by this appeal, it is unnecessary to discuss other assignments of error.

Decree reversed and record remitted to the court below with instructions to make the injunction permanent as prayed for, unless cause be there shown why such decree should not be made.