560 A.2d 885

**RICHLAND SCHOOL DISTRICT et al., Appellants,**

**v.**

**CENTRAL TRANSPORTATION, INC., a Pennsylvania Corporation, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1989.

Decided June 19, 1989.

Reargument Denied Aug. 29, 1989.

Daniel W. Rullo, Barbera and Barbera, Somerset, for appellants.

William K. Eckel, Johnstown, for appellee.

Before BARRY and SMITH, JJ., and NARICK, Senior Judge.

## OPINION

BARRY, Judge.

Richland School District (School District) and six members of its Board of Directors (hereinafter referred to as the Board) appeal from an order of the Court of Common Pleas of Cambria County denying their motion for post trial relief from a decree nisi entered in favor of Central Transportation, Inc. (Central).

The School District had solicited sealed bids for its student transportation services for the school years 1988–89 through 1992–93, along with a two-year option for renewal. In both the notice to bidders and the bidding specifications it reserved the right to reject any and all bids. Central and Lodestar Bus Lines, Inc. (Lodestar) were among those contractors that submitted bids. On February 26, 1988, the bids were opened at a public meeting and it was discovered that Central's bid was the lowest. Thereafter, Lodestar's owner, first orally and later by letter, informed the School District that a clerical error had been committed in the preparation of the bid it had submitted and requested an opportunity to correct that error.[1] The correction it sought to make would have resulted in its bid becoming the lowest bid instead of that of Central. The Board did not afford Lodestar the opportunity it requested. However, on March 15, 1988, by a vote of six to three, it authorized the rejection of all bids that had been submitted, the amendment of the bidding specifications and rebidding of the contract.

Thereafter, Central instituted an equity action against the appellants, requesting that they be enjoined from rejecting the bid it had submitted, rebidding the contract and awarding it to any contractor other than itself and that they be

1. Interested parties were to submit a bid in which the proposed charges for both regular student transportation service and transportation for extra-curricular activities were to be stated. The proposed charge for transportation for extra-curricular activities was to be stated as a rate per mile and a rate per hour for each of the five school years to be covered by the contract. Lodestar claimed that it erroneously typed the numbers which were to have been inserted under the column captioned "Rate Per Hour" under the column captioned "Rate Per Mile" and vice versa.

directed to accept its bid and enter into a contract with it pursuant to that bid.[2] Appellants filed preliminary objections to Central's complaint, by which they challenged its standing to institute the action and contended that an adequate remedy at law existed. Following a hearing, the chancellor entered a decree nisi granting the relief sought by Central. By the same order, it dismissed appellants' preliminary objections. Post-trial motions filed by the appellants were subsequently denied and the decree nisi was affirmed. This appeal followed.

Appellants present two issues for our consideration: (1) Did Central have standing to challenge the Board's decision to reject its bid and require rebidding for student transportation services when it is not a taxpayer of the School District but, however, is a taxpayer of the Commonwealth; and (2) Did the chancellor abuse his discretion in granting the relief requested by Central when he found that the Board's decision to reject all bids and require rebidding of the contract was made in good faith.[3]

In *Weber v. Philadelphia*, 437 Pa. 179, 262 A.2d 297 (1970), the Supreme Court summarized the principles of law to be considered by courts when reviewing decisions of municipalities to reject bids submitted for municipal contracts:

> In this area, certain principles are well settled and stem, in large measure, from judicial respect for the doctrine of separation of powers in government. First, it is presumed that municipal officers properly act for the public good. Second, courts will not sit in review of municipal actions involving discretion, in the absence of proof of fraud, collusion, bad faith or arbitrary action

**2.** Lodestar filed a petition to intervene in the action. That petition was denied.

**3.** The scope of review by Commonwealth Court of a court of common pleas sitting in equity is severely restricted. We will not reverse if apparently reasonable grounds exist for the relief ordered and no erroneous or inapplicable rules of law were relied on. *Jackson v. Hendrick*, 72 Pa.Commonwealth Ct. 63, 456 A.2d 229 (1983).

equating an abuse of discretion. Third, on judicial review, courts, absent proof of fraud, collusion, bad faith or abuse of power, do not inquire into the *wisdom* of municipal actions and *judicial* discretion should not be substituted for *administrative* discretion. Fourth, if a municipality, in connection with competitive bidding, is empowered to do so, it may reject any and all bids in the absence of fraud, collusion, bad faith or arbitrary action. Fifth, the requirement of competitive bidding for municipal contracts guards against 'favoritism, improvidence, extravagence, fraud and corruption in the awarding of municipal contracts, and to secure the best work or supplies at the lowest price practicable ...'.

*Id.*, 437 Pa. at 183, 262 A.2d at 299 (emphasis in original; citations omitted).

In the opinion accompanying the decree nisi, the chancellor stated that he believed that the Board was acting in good faith when it decided to reject all bids and require rebidding upon learning of Lodestar's claimed clerical error. *Central Transportation, Inc. v. Richland School District,* (No. 1988—679, filed April 5, 1988), slip op. at 3. Appellants argue that, in light of such a finding, it must be concluded that the chancellor abused his discretion in granting the relief requested by Central.

■ Here, however, the chancellor concluded that, if the Board were to reject the bid of the lowest responsible bidder on the first bidding because an unsuccessful bidder claimed to have made an error in the preparation of its bid, it would be violating the requirement that competitive bidding be conducted openly, fairly and without favoritism. This Court has stated that, when that requirement is violated, the cases which deal with a court's interference with the discretion committed to public officials would be inapposite. *Conduit and Foundation Corporation v. City of Philadelphia,* 41 Pa.Commonwealth Ct. 641, 645–46, 401 A.2d 376, 379 (1979).

Nevertheless, we do not agree with the chancellor's conclusion that the appellants would have violated the requirement that competitive bidding be conducted openly, fairly and without favoritism.[4]

This is not a case similar to that in *Mazet v. Pittsburgh,* 137 Pa. 548, 20 A. 693 (1890), where there was failure to prepare bidding specifications for the contract in question. Moreover, there is no claim that the bidding specifications were unclear as to whether a particular term would be permitted, or was required, to be included in the bid. *See Conduit and Foundation Corp.* This is not a case where it was planned to award a contract to a party who had submitted a bid or a required instrument which did not conform to the specifications on which all other bidders had submitted their bids. *See Philadelphia Warehousing and Cold Storage v. Hallowell,* 88 Pa.Commonwealth Ct. 574, 490 A.2d 955 (1985); *Lasday v. Allegheny County,* 499 Pa. 434, 453 A.2d 949 (1982). Nor is this a case where the plan was to award a contract to a party who, following the opening of the bids, would be permitted through private communications to either revise the terms of its bid or a required instrument. *American Totalisator Co., Inc. v. Seligman,* 34 Pa.Commonwealth Ct. 391, 384 A.2d 242 (1977), *affirmed* 489 Pa. 568, 414 A.2d 1037 (1980); *Harris v. Philadelphia,* 283 Pa. 496, 129 A. 460 (1925). In short, it does not appear that the Board, in rejecting all bids and requiring rebidding of the contract, would have conferred a competitive advantage upon Lodestar to the detriment of Central and the other bidders.[5]

4. That requirement is violated only when bidders are treated other than by a common standard. *Page v. King,* 285 Pa. 153, 131 A. 707 (1926).

5. We note that, in *Louchheim v. City of Philadelphia,* 218 Pa. 100, 66 A. 1121, (1907), the Supreme Court stated that, if the city's director of public works was convinced that the best interest of the city demanded it, he should have set aside all of the bids, readvertised and secured another open competitive bidding instead of entering into private negotiations with the successful bidder through which the terms and conditions of that bidder's bid was modified or changed. That is what action the Board in this case was prepared to take.

Central argues that, if the Board is allowed to reject all bids and rebid the contract, it would be doing indirectly what it could not do directly; namely, afford Lodestar the opportunity to submit a revised bid for that contract with knowledge of the amounts of the other bids. However, what, Central does not recognize or fails to point out is that, with the rejection of all bids and rebidding, it and the other bidders also are afforded the opportunity to submit revised bids for the student transportation service contract with knowledge of the amounts of the bids that were rejected. Thus, they would have been on equal footing with Lodestar.

■ Central also argues that a municipal contract must be awarded to the party who is discovered to be the lowest bidder on the first bidding if the governmental agency which solicited those bids concedes that that party is a responsible bidder. It looks to the doctrine of equitable estoppel and the case of *Berryhill v. Dugan,* 89 Pa.Commonwealth Ct. 46, 491 A.2d 950 (1985), as support for that proposition.

In *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841 (1975), the Supreme Court summarized the law on equitable estoppel as follows:

Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken. When a party 'by his acts, representations, or admissions or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts ... the person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, aver a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct, or statements. It is well-established, however, that the burden rests on the party

asserting the estoppel to establish such estoppel by clear, precise and unequivocal evidence. (Citations omitted.) *Id.,* 460 Pa. at 417, 333 A.2d at 843–44.

In reviewing the record in the present matter, this Court finds no evidence which establishes that the Board had represented to parties which had submitted a bid for the contract that it would accept the bid of the party found to be the lowest responsible bidder *on the first bidding.*[6] Consequently, at least one of the essential elements of estoppel would not be present.

Meanwhile, unlike the present case, *Berryhill* did not involve a situation where a municipality had rejected all bids that had been submitted for a contract and had authorized rebidding. Instead, it involved a situation where a municipality had awarded a contract to the second lowest bidder, rather than the lowest bidder. In defending their choice, the appellants in *Berryhill* contended that they found that the lowest bidder was not responsible. In response to that contention, this Court reiterated the standard for responsibility of a bidder which was announced by the Supreme Court in *Kratz v. Allentown,* 304 Pa. 51, 54, 155 A. 116, 117 (1931):

The statute provides that municipal contracts be let to the lowest responsible bidder, but the courts have uniformly held that the question of who is the lowest responsible bidder is one for the sound discretion of the proper municipal authority, and does not necessarily mean the one whose bid on its face is lowest in dollars, but includes financial responsibility, also integrity, efficiency, industry, experience, promptness, and ability to successfully carry out the particular undertaking, and that a bond will not supply the lack of these characteristics.... At the same time, it is held that to award the contract to a higher bidder capriciously without a full and careful

6. To the contrary, those parties were put on notice that their bids might be rejected. As previously noted, the Board expressly reserved a right to reject all bids in both the notice to bidders and bidding specifications. *See R.S. Noonan, Inc. v. York School District,* 400 Pa. 391, 162 A.2d 623 (1960).

investigation which equity will restrain.... Where a full investigation discloses a substantial reason which appeals to the sound discretion of the municipal authorities they may award a contract to one not in dollars the lowest bidder. The sound discretion, which is upheld, must be based upon a knowledge of the real situation gained by a careful investigation.

The discretion, however, is in the determination of who is the lowest responsible bidder; when that is settled, discretion ends and the contract must be awarded, if at all, to him, ... regardless of the difference in the bids, whether it is more or less. The statute requiring that municipal contracts be awarded to the lowest responsible bidder is mandatory.

*Berryhill,* 89 Pa.Commonwealth Ct. at 49–50, 491 A.2d at 952.

In making the above statement, the Supreme Court in *Kratz* was not stating that a governmental agency has no discretion *to reject all bids and require rebidding* if it concedes that the lowest bidder on the first bidding is responsible.[7] Instead, it was stating that, where the governmental agency decides to award the contract to one of the parties who submitted a bid pursuant to the first solicitation, the only discretion it has in selecting the bidder to whom the contract is to be awarded is that which is involved in determining whether a bidder is responsible. If it determines that the lowest bidder is responsible, then it has no discretion to award the contract to some other bidder.

The chancellor's order in this matter can be affirmed only if the Board's rejection of all bids and its rebidding of that contract can be said to constitute arbitrary action so as to amount to an abuse of discretion. We cannot, however, make that conclusion.

7. *Kratz* like *Berryhill,* did not involve a situation where the governmental agency sought to reject all bids for a contract and require rebidding of it.

Here, the Board had learned that, had there not been a clerical error in its preparation, Lodestar's initial bid for the student transportation services contract would have been roughly $233,000 lower than that of Central for the five year period involved. Thus, it had reason to anticipate that, upon rebidding of that contract, it would receive bids that were lower than Central's initial bid and, as a result thereof, expend a lesser amount of funds than it would have expended had it accepted Central's initial bid. Under such circumstances, it cannot be said that the actions which the Board had voted to take were either arbitrary or capricious. Instead, they constituted a rational course of action.

Accordingly, the order of the chancellor denying the appellants' motion for post trial relief is reversed.[8]

### ORDER

NOW, June 19, 1989, the order of the Court of Common Pleas of Cambria County, dated June 20, 1988, at Docket No. 1988–679, is reversed.

SMITH, J., dissents.

8. Because we have chosen to decide this case on the merits, we do not address the issue regarding Central's alleged lack of standing.