**PA ASSOCIATED BUILDERS AND CONTRACTORS, INC., Petitioner**

v.

**COMMONWEALTH DEPARTMENT OF GENERAL SERVICES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 21, 2010.

Decided May 19, 2010.

Ray A. Powell and John W. Boyle, Pittsburgh, for petitioner.

David L. Narkiewicz, Asst. Chief Counsel, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, COHN JUBELIRER, Judge, LEAVITT, Judge, BROBSON, Judge, and McCULLOUGH, Judge.

OPINION BY Judge PELLEGRINI.

Before this Court is a motion for summary relief[1] filed by PA Associated Builders and Contractors, Inc. (ABC) requesting us to find the Department of General Services' (DGS) use of competitive sealed proposals also known as requests for proposals (RFPs) rather than competitive sealed bids for complex construction projects or projects with allocations in excess of $5,000,000 in violation of the Pennsylvania Procurement Code.[2] DGS has filed a cross-motion for summary relief requesting us to dismiss all of the issues raised in ABC's motion as moot with the exception of the constitutional argument raised and then requests this Court to find that its use of the RFPs is constitutional.

## I.

Before 2005, when a building or facility needed to be constructed in Pennsylvania, the process that was followed to award construction contracts was competitive sealed bidding pursuant to Section 511 of the Procurement Code, 62 Pa.C.S. § 511.[3] This process provided that the award of the contract went to the lowest responsible bidder in order to ensure fairness while

---

1. The matter is on remand from the Pennsylvania Supreme Court which reversed and remanded our decision in *Pennsylvania Associated Builders and Contractors, Inc. v. Commonwealth, Department of General Services,* 899 A.2d 389 (Pa.Cmwlth.2006) (*Associated Builders I*). By reversing that case, our Supreme Court also reversed and remanded our accompanying decision in a memorandum opinion, *Worth & Company v. Department of General Service and State System of Higher Education,* (Pa.Cmwlth., No.2078 C.D.2005, filed May 18, 2006), where we granted Worth's petition for review addressing the same issues.

2. 62 Pa.C.S. §§ 101–4509.

3. 62 Pa.C.S. § 511 provides:
Unless otherwise authorized by law, all Commonwealth agency contracts shall be awarded by competitive sealed bidding under Section 512 relating to competitive sealed bidding except as provided in:

Section 512.1 (relating to competitive electronic auction biddings)
Section 513 (relating to competitive sealed proposals)
Section 514 (relating to small procurements)
Section 515 (relating to sole source procurement)
Section 516 (relating to emergency procurements)
Section 517 (relating to multiple awards)
Section 518 (relating to competitive selection procedures for certain services)
Section 519 (relating to selection procedure for insurance and notary bonds)
Section 520 (relating to supplies manufactured and services performed by persons with disabilities)
Section 905 (relating to procurement of design professional services)

also guarding against fraud and favoritism to all those bidding. Section 512(g) of the Procurement Code, 62 Pa.C.S. § 512(g).[4] After the bids were received and opened, all of the bidding documents were considered public records. *Vartan v. Department of General Services*, 121 Pa.Cmwlth. 470, 550 A.2d 1375 (1988).[5] While not widely used, Section 513 of the Procurement Code, 62 Pa.C.S. § 513,[6] allowed for competitive sealed proposals or RFPs when competitive sealed bidding was either not "practicable or advantageous" to the Commonwealth.

On April 7, 2005, DGS issued the "Best Value Policy" which authorized the use of RFPs "to accomplish the Department's goal of improving upon timely delivery of quality multiple-prime construction projects by qualified contractors. The process should be considered for use on complex projects or projects with allocations exceeding $5,000,000." The Policy Determination went on to state:

> The Deputy Secretary shall make a written determination, as required by § 513(a) of the Commonwealth Procurement Code, to use the competitive sealed proposal process, if, in his or her opinion, the use of competitive sealed

bidding is either not practicable or advantageous to the Commonwealth. The Department will create a standard Request for Proposal for Multiple Prime Contractors for Construction, along with standard Request for Proposal Guidelines. These documents may be modified with the approval of the Deputy Secretary for Public Works to address the unique circumstances of each project.

Under the Policy Determination, on or before the time identified in the RFP, each contractor submits its project proposal package to DGS. The proposal is to contain three sealed submissions. Contractors have to submit a sealed "cost" submission which includes a lump sum amount for which the contractor proposes to perform the work. Then, the contractors have to submit a "technical" submission which has the requirements set forth in the RFP. Finally, the contractors have to submit a sealed Disadvantaged Business Enterprise submission that includes the minority, women-owned or small disadvantaged business subcontractor participation with each contractor. The proposal is then reviewed by a DGS representative from the Office of Chief Counsel, a member of DGS'

4.  Section 512(g) provides:

    **(g) Award.** The contract shall be awarded within 60 days of the bid opening by written notice to the lowest responsible bidder or all bids shall be rejected except as otherwise provided in this section.

5.  The General Assembly's purpose in requiring competitive bidding was to ensure that the public had faith in its government:

    It is clear that the statutory requirements for competitive bidding ... do not exist solely to secure work or supplies at the lowest possible price, but also have the "purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud, and corruption in the awarding of municipal contracts ... and are en-

acted ... not for the benefits or enrichment of bidders ..." *Yohe v. Lower Burrell*, 418 Pa. 23, 28, 208 A.2d 847, 850 (1965), adopting 10 McQuillan, Municipal Corporations § 29.29 (3rd ed. 1950). The obvious intent of the applicable statute is thus also to "close as far as possible, every avenue to favoritism and fraud in its varied forms." *Louchheim v. Philadelphia*, 218 Pa. 100, 66 A. 1121 (1907), quoting *Mazet v. City of Pittsburgh*, 137 Pa. 548, 20 A. 693 (1890).

6.  62 Pa.C.S. § 513 provides the following:

    **Conditions for use.** When the contracting officer determines in writing that the use of competitive sealed bidding is either not practicable or advantageous to the Commonwealth, a contract may be entered into by competitive sealed proposals.

bidding unit and a representative for the Comptroller's Office to verify the proposal's compliance with the mandatory requirements of the RFP. Then the technical submission is reviewed by a Proposal Evaluation Committee consisting of five voting members appointed by DGS. Points are awarded to each element of each contractor's technical proposal. The contract is then awarded based on the cost (60%), a technical score on the competency of the contractor to perform the work (30%), and a disadvantaged business score (10%).

Unsuccessful proposers who wish to challenge the award are required to request a debriefing session within two business days of the notice of elimination or notice of selection, whichever is received first. Debriefings are then scheduled within five business days of receipt of the written request for a debriefing, but no later than seven days from the date of the notice of selection. Unsuccessful proposers are debriefed as to their own proposal, their "relative rank and the final scoring process," and the successful proposer's total cost. DGS does not disclose any information under the policy regarding the evaluation of the contract awardee's proposal.

If a prospective bidder desires to challenge the use of the RFP process rather than the use of the competitive sealed bids to award the contract, it can bring a challenge under Section 1711(a) of the Procurement Code which provides:

> (a) **Right to protest.**—A bidder or offeror, a prospective bidder or offeror or a prospective contractor that is aggrieved in connection with the solicitation or award of a contract, except as provided in section 521 (relating to cancellation of invitations for bids or requests for proposals), may protest to the head of the purchasing agency in writing.
>
> (b) **Filing of protest.**—If the protestant is a bidder or offeror or a prospective contractor, the protest shall be filed with the head of the purchasing agency within seven days after the aggrieved bidder or offeror or prospective contractor knew or should have know of the facts giving rise to the protest except that in no event may a protest be filed later than seven days after the date the contract was awarded.... If a bidder or offeror, a prospective bidder or offeror or a prospective contractor fails to file a protest or files an untimely protest, the bidder or offeror, the prospective bidder or offeror or the prospective contractor shall be deemed to have waived its right to protest the solicitation or award of the contract in any forum. Untimely filed protests shall be disregarded by the purchasing agency.

However, under the Procurement Code, a bid protestor is not automatically entitled to a hearing. Section 1711.1(e) of the Procurement Code [7] specifies:

> The head of the purchasing agency or his designee shall review the bid protest and any response or reply and may request and review such additional documents or information he deems necessary to render a decision *and may, at his sole discretion, conduct a hearing.* (Emphasis added.)

## II.

Prompted by DGS' determination to use the RFP process for the renovation of the Foster Union Building at Cheyney University (Cheyney Project), ABC filed in its

---

7. In *Direnzo Coal Company v. Department of General Services*, 779 A.2d 614 (Pa.Cmwlth. 2001), we held that the Procurement Code provided disappointed bidders with standing to protest the award of a contract, and they could pursue and receive judicial review.

representative capacity in this court's original jurisdiction a petition for review alleging that the Request for Proposal method of awarding contracts set forth in Section 513 could not be used for construction contracts because those contracts could only be awarded through the competitive sealed bidding process under Section 511. ABC also alleged:

- Article III, Section 22 of the Pennsylvania Constitution required the use of competitive sealed bids for construction contracts;
- Even if the RFP procedure for construction contracts is permitted, it argues that the Department did not offer sufficient reasons for using that procedure rather than the default competitive bidding process;
- The "best value" policy statement was not promulgated in accordance with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. § 1102–1602;
- Its due process rights under the Pennsylvania and federal constitutions were violated because it did not receive sufficient explanation and a hearing when it challenged the RFP method selected to award the contract; and
- The process used violated the Separations Act, Act of May 1, 1913, P.L. 155, *as amended,* 71 P.S. § 1618; DGS regulations, 4 Pa.Code § 69.6; the common law; and the Commonwealth Documents Law.

ABC filed a motion for partial summary judgment, which we granted, holding that DGS was prohibited from using Section 513 for construction contracts because the General Assembly did not intend construction contracts to be included in Section 513. Based on our determination, we did not address the other issues raised by ABC but held that DGS was enjoined from utilizing the competitive sealed proposal bidding process on any future construction project under its April 7, 2005 policy determination. However, our Supreme Court reversed, holding that the Section 513 request for proposal procedure could be used to award construction contracts. It then remanded the matter to this Court for a determination of the remaining issues.

■ The parties have now filed a joint stipulation of facts and cross-motions for summary relief.[8] ABC's motion for summary relief essentially raises the same arguments that it previously raised before this Court. It requests that we permanently enjoin DGS from further using the RFP process and also requests that we award attorney's fees. DGS has filed a cross-motion for summary relief arguing that all of ABC's arguments are moot with the exception of the constitutional issue. Because ABC's arguments do not deal strictly with the completed Cheyney Project but apply equally to other construction projects using the RFP process for the solicitation of bids and is, thus, capable of repetition, we decline to find ABC's motion for summary relief moot.

### III.

■ ABC argues first that DGS' use of the RFP process violates its constitutional rights because the RFP violates Article III, Section 22 of the Pennsylvania Constitution, which it contends states that construction contracts must be awarded under a "system of competitive bidding." Article

---

**8.** A motion for summary relief may be granted only when there is no genuine issue of material fact as to a necessary element of a cause of action, and the moving party has established entitlement to judgment as a matter of law. *Pakett v. Phillies, L.P.,* 871 A.2d 304 (Pa.Cmwlth.2005).

III, Section 22 of the Pennsylvania Constitution provides, in relevant part:

> The General Assembly shall maintain by law a system of competitive bidding under which *all purchases of materials*, printing, *supplies* or other *personal property* used by the government of this Commonwealth shall so far as practicable be made. (Emphasis added.)

While noting that this provision does not specifically mention construction contracts, ABC argues that because construction involves the purchase of materials and supplies, it requires that only the competitive bidding process be used. ABC's interpretation is not supported, however, either by the language of this provision or by its history.

First, the plain language of this provision requiring competitive bidding is limited to "personal property" while a construction contract is for construction or renovation of "real property or fixtures." Second, the only mention of competitive bidding in construction contracts in the Constitution was contained in the predecessor to Article III, Section 22, which was Article III, Section 12 of the 1874 Constitution entitled "Public Printing." Article III, Section 12 dealt with the public printing of documents as well as the repairing and furnishing of the halls and rooms used for the meeting of the General Assembly.[9] While there was a reference to "bidding" on the repair of the rooms by the "lowest responsible bidder" in Article III, Section 12, when Article III, Section 12 was re-pealed in 1967 and replaced by Article III, Section 22 regarding state purchases, that provision was eliminated. Because nothing in the language of Article III, Section 22 applies to the competitive bidding of anything involving construction contracts, ABC's constitutional argument under Article III, Section 22 of the Pennsylvania Constitution fails.

## IV.

### A.

■ ABC argues next that competitive sealed proposals cannot be used in construction contracts because 4 Pa.Code § 69.6 does not permit DGS to use RFPs for construction contracts. However, Chapter 69 of the Pa.Code is inapplicable to construction projects. "This chapter establishes procedures, defines responsibilities and provides specific guidance for awarding Commonwealth contracts for the purchase of goods and supplies." 4 Pa. Code § 69.2. "Contract" is defined as "A contract for the purchase of goods and supplies." 4 Pa.Code § 69.1. "Goods and supplies" is defined as "Equipment, furniture and furnishings, stationery, materials, or supplies that may be needed by a department, board or commission." *Id.* Moreover, just because there are no regulations regarding the use of competitive sealed proposals does not mean that the agency cannot use that method of solicitation when such authorization is provided by the Procurement Code.

---

**9.** Article III, Section 12 of the 1874 Constitution provided:

> All stationery, printing, paper and fuel used in the *legislative and other departments of* government shall be furnished, and the printing, binding and distributing of the laws, journals, department reports, and all other printing and binding, and the repairing and furnishing the halls and rooms used for the meeting of the General Assembly and its committees, shall be performed under contract to be given to *the lowest responsible bidder* below such maximum price and under such regulations as shall be prescribed by law; no member or officer of any department of the government shall be in any way interested in such contracts, and all such contracts shall be subject to the approval of the Governor, Auditor General and State Treasurer. (Emphasis added.)

## B.

As an alternative argument, ABC argues that DGS had to follow applicable rulemaking procedures in implementing its Policy Determination because it constituted a binding norm. Until that is done, it argues that the competitive sealed proposal process cannot be used for construction contracts.

In *Department of Environmental Resources v. Rushton Mining Company*, 139 Pa.Cmwlth. 648, 591 A.2d 1168 (1991), coal mining permittees challenged the validity of permit conditions imposed by the Department of Environment Resources (DER). DER approved the permits subject to the coal mine operators' compliance with standard permit conditions, and the operators filed appeals challenging the validity of those standard conditions. They contended that the standard conditions were regulations because they constituted binding rules of general applicability and future effect and were invalid because they had not been promulgated in accordance with the Commonwealth Documents Law. The Environmental Hearing Board (EHB) agreed with the operators, and the DER appealed to this Court. We discussed the difference between a policy determination and a regulation stating that an agency could establish a binding policy through rulemaking procedures by which it promulgated substantive rules or through adjudications which constituted binding precedents:

A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent; but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications. A general statement of policy, like a press release, presages an upcoming rulemaking or announces the course which the agency intends to follow in future adjudications.

The critical distinction between a substantive rule and a general statement of policy is the different practical effect that these two types of pronouncements have in subsequent administrative proceedings ... A properly adopted substantive rule establishes a standard of conduct which has the force of law ... The underlying policy embodied in the rule is not generally subject to challenge before the agency.

A general statement of policy, on the other hand, does not establish a "binding norm" ... A policy statement announces the agency's tentative intentions for the future. When the agency applies the policy in a particular situation, it must be prepared to support the policy just as if the policy statement had never been issued.

"Binding norm" means that the agency is bound by the statement until the agency repeals it, and if the statement is binding on the agency, it is a regulation. Additionally, in determining whether an agency action is a regulation or a statement of policy, one must look to the extent to which the challenged pronouncement leaves the agency free to exercise discretion to follow or not follow the announced policy in an individual case.

*Rushton Mining Company*, 591 A.2d at 1173.[10]

If the policy statement constituted a binding norm, DGS would have to promulgate a regulation and implement that poli-

---

10. *See also Eastwood Nursing and Rehabilitation Center v. Department of Public Welfare,* 910 A.2d 134 (Pa.Cmwlth.2006); *Home Buildingers Association of Chester and Delaware Counties v. Department of Environmental Protection,* 828 A.2d 446 (Pa.Cmwlth.2003).

cy in accordance with the procedures set forth in the Commonwealth Documents Law.[11] In this case, though, the Policy Determination does not establish "binding norms," but only indicates that internally, DGS should consider using this procurement method when competitive sealed bidding is either not practicable nor advantageous to the Commonwealth. Because the policy is not a binding norm but merely a statement of intent, it is not an improperly promulgated regulation.

## V.

ABC contends that the RFP process cannot be used on construction contracts for State System of Higher Education (SSHE) buildings even if DGS is the contracting agency when SSHE money is used because Section 2003–A.1(a) of the Public School Code of 1949, *as amended,* added by the Act of June 23, 1988, P.L. 457, 24 P.S. § 20–2003–A.1(a), mandates competitive sealed bids. Section 2003–A.1(a) provides, in relevant part:

> (a) The State System of Higher Education is hereby authorized to execute and administer contracts for construction, repair, renovation and maintenance projects within the meaning of section 2401.1 of the act of April 9, 1929, (P.L. 177, No. 175), known as "The Administrative Code of 1929," including all aspects of project management, design

and construction and legal and administrative services related to and necessary for the completion of such projects, *except capital projects which are funded by Commonwealth general obligation bonds, capital appropriations or pursuant to Article XI–B of the Act of April 9, 1929 (P.L. 343, No. 176), known as "the Fiscal Code," unless delegated by the Department of General Services to the system.* (Emphasis added.)

Because $1.5 million of the $6 million used in the Cheyney Project were from SSHE funds, ABC argues that the competitive sealed bidding process should have been used to award the contract.[12]

■ While disagreeing with ABC's contention that Section 2003–A.1(a) of the Public School Code of 1949 precludes it from using the RFP process when it is the contracting agency, DGS contends that this argument is irrelevant because SSHE is permitted to use the method of solicitation set forth in the Procurement Code to award contracts. We agree. The Procurement Code provides that it "applies to every expenditure of funds, other than the investment of funds, by *Commonwealth agencies* under any contract, irrespective of their source ..." 62 Pa.C.S. § 102. A "Commonwealth agency" is defined as "[a]n executive agency, an independent agency or a *State-affiliated entity.*" 62

---

11. Pursuant to Section 201 of the Commonwealth Documents Law, 45 P.S. § 1201, DGS would have to provide public notice of its intention to make any changes, and the notice would have to include the text of the proposed administrative regulation; a statement of the statutory or other authority under which the regulation was proposed to be promulgated; a brief explanation of the proposed administrative regulation; and a request for written comments by any interested parties. Before adopting the regulation, DGS would then have to review and consider any written comments. Section 202 of the Commonwealth Documents Law, 45 P.S. § 1202. Finally, the

regulation would have to be approved for its legality by the Department of Justice before being deposited with the Legislative Reference Bureau. Section 205 of the Commonwealth Documents Law, 45 P.S. § 1205.

12. DGS has issued at least six written determinations approving the use of competitive sealed proposals for construction which we have reviewed. Without commenting on their legal sufficiency, we note that DGS has been giving more detailed reasons in its Bid Search Details than it did for the Cheyney Project.

Pa.C.S. § 103. A "State-affiliated entity" is defined as "[a] Commonwealth authority or a Commonwealth entity. The term includes ... *the State System of Higher Education*." *Id.* While 62 Pa.C.S. § 301(d) provides that "state affiliated entities may formulate their own procurement policy governing the procurement, management, control and disposal of ... construction and may act as their own purchasing agency for the procurement of ... construction," because SSHE has not done so, the RFP process authorized by Section 513 of the Procurement Code can be used to solicit bids for construction contracts.

## VI.

■ Finally, ABC contends that DGS' determination to use the RFP method of selection for the Cheyney Project did not satisfy Section 513's requirement that the competitive sealed proposal method of selection can only be used "[w]hen ... the use of competitive sealed bidding is either not practicable or advantageous."

As pointed out to us by DGS, our Procurement Code is modeled after the ABA Model Procurement Code. Section 513 of the Procurement Code was modeled after Section 3–203 of the Model Procurement Code, which contains the same language at issue here.[13] The commentary to Section 3–203 notes in subsection (1) that competitive sealed bidding is the preferred method

of procurement. Subsection (2) explains that both competitive sealed bidding and competitive sealed proposals assure price and product competition, and that the criteria to be used in either evaluation process must be fully disclosed in the solicitation. Subsection (3) describes the two methods and how they differ. Subsection (4) defines "practicable" and "advantageous" and states that they are to be given their ordinary dictionary meanings.[14] Most importantly, subsection (5) of the commentary states:

> (5) Whenever it is determined that it is practicable but not advantageous to use competitive sealed bidding, **the basis for the determination should be specified with particularity.** (Emphasis added.)

The question then is what level of particularity is needed when the contracting officer determines in writing that the use of competitive sealed bidding is either not "practicable or advantageous."

■ To meet the "particularity" standard, it is not enough for the contracting officer to merely state that the competitive bidding process is not "practicable or advantageous," that use of RFPs is "better" in general or to just give some vague reasons why it chose to use an RFP on a particular project over the default competitive bidding process. Rather, the determi-

---

**13.** Section 3–203 of the Model Procurement Code provides:

(1) *Conditions for Use.* When, under regulations promulgated by the Policy Office, the Chief Procurement Officer, the head of a Purchasing Agency, or a designee of either officer above the level of the Procurement Officer determines in writing that the use of competitive sealed bidding is either **not practicable or not advantageous** to the [State], a contract may be entered into by competitive sealed proposals. The Policy Office may provide by regulation that it is either not practicable or not advantageous

to the [State] to procure specified types of supplies, services, or construction by competitive sealed bidding. (Emphasis added.)

**14.** The commentary further states:

In general, " 'practicable' " denotes a situation which justifies a determination that a given factual result can occur. A typical determination would be whether or not there is sufficient time or information to prepare a specific action suitable for competitive sealed bidding. "Advantageous" connotes a judgmental assessment of what is in the [State's] best interest.

nation must contain a detailed explanation of why on a particular contract the RFP process has to be used. For that explanation to satisfy the particularity standard, the RFP determination must explain the contracting agency's decision so that a prospective bidder has sufficient information to make an informed decision of whether to file a bid protest. Moreover, absent a hearing, the written determination to use the RFP process should be sufficient for meaningful judicial review if an appeal is taken. Most importantly, it is necessary to give the particular reasons why the competitive sealed proposal process must be used to insure the integrity of the bidding process so that the public can know that the RFP process is being used to get the "best value" for public money expended on the project and not to award the contract to the "best buddy."

A determination that contains a sufficient level of particularity also satisfies ABC's members' due process rights because the reasons given are now sufficient for it to file a bid protest.[15] If the written determination is sufficient to explain DGS' reasons, then it also gives potential bid protestors a sufficient basis to file a bid protest. Similarly, if the reasons given in the written determination show that there was not an abuse of discretion in using the RFP procedure, it necessarily follows that the hearing officer did not abuse his or her discretion in denying a hearing on the bid protest.

For the Cheyney Project, DGS issued a "Determination to Use the Request for RFPs" dated April 11, 2005, stating the following:

The use of the standard competitive sealed bid process for the renovation of Foster Union would not be advantageous to the Commonwealth. Competitive sealed proposals are a more practical method of procurement since this will allow Proposers flexibility in developing their proposals **to address their experience with this type of work and the ability to complete coordinated construction in a timely manner. In addition to expediting the process,** this method will be more advantageous by allowing the Commonwealth the ability **to consider criteria other than cost in the award process.** The prime contracts to be awarded, if any, will be agreed-upon lump sum awards reflecting the costs submitted in the proposals. (Emphasis added.)

(Exhibit 8 of ABC's brief.) Essentially, the "specific" reasons that DGS provided to bidding contractors for using RFPs rather than competitive sealed bids on the Cheyney Project were that RFPs would allow them to address their experience with "this type of work" and the "ability to complete coordinated construction in a timely manner." It would also allow DGS to "consider criteria other than costs."

Our review of the "Bid Search Details" for the Cheyney Project provides the following description of the project:

PROJECT TITLE: Renovation of Foster Union. BRIEF DESCRIPTION: Work consists of renovations and additions to an approximately 50,000 SF building, including site work, hazmat abatement, demolition, general construc-

---

**15.** ABC argues that unless DGS' determination satisfied the "practical or advantageous" standard required in Section 513, then it members' due process rights under Article I, Section I of the Pennsylvania Constitution and the due process clause of the 14th Amendment to the United States Constitution would be violated because it would thwart their right to take an appeal because they would not know the basis of the agency's determination to use that RFP method of selection and were not allowed a due process hearing on their challenge.

tion, HVAC, plumbing, electrical, and related work.

Based on this description sent out to contractors, there is nothing unique about the work that required DGS to use an RFP or to state in its Determination to Use the Request for RFPs that experience with "this type of work" was needed. The above description is for ordinary construction work. The request to have work coordinated with subcontractors and other contractors and completed timely is expected on all construction sites. Moreover, DGS' statement in the Determination that it wants to consider criteria "other than costs" gives no reason why that is necessary and no information to the contractors as to what criteria it is considering so they can know what to put in their proposals.[16] To meet the particularity standard, DGS must explain the nature of the contract and state with specificity why, for example, the renovation of Foster Union required closed sealed proposals and why general

contract work required specialized bidding when the work was not intricate or specialized. If the use of RFPs denied contractors the right to bid, then DGS would have to provide notice and a hearing and give specific reasons why RFPs were utilized.

Consequently, the RFP used for the Cheyney Project did not provide enough specificity to comply with the Procurement Code. In order for DGS to use RFPs in the future, it must meet a much higher standard than it currently uses to prove that it is not "practicable or advantageous" to use competitive sealed bidding under Section 511.

Accordingly, for the above stated reason alone, ABC's motion for summary relief is granted and DGS' cross-motion for summary relief is denied.[17]

President Judge LEADBETTER dissents.

16. DGS' stated reasons in awarding the Cheyney Project contract neither rendered the use of competitive sealed bidding impracticable nor disadvantageous to the Commonwealth because Section 512(g) of the Procurement Code, 62 Pa.C.S. § 512(g), already required DGS to consider the factors it alleged were necessary in utilizing the RFPs—suitability to perform this type of project, i.e., experience and delivery, timeliness. 62 Pa.C.S. § 512(g) provides, in relevant part:

> Bids shall be evaluated based on the requirements set forth in the invitation for bids, *which may include* criteria to determine acceptability such as inspection, testing, quality, workmanship, delivery and suitability for a particular purpose. Those criteria that will affect the bid price and be considered in evaluation for award shall be objectively measurable, such as discounts, transportation costs and total or life cycle costs. *The invitation for bids shall set forth the evaluation criteria to be used.* No criteria may be used in bid valuation that are not set forth in the invitation for bids.

Moreover, 62 Pa.C.S. § 512(g) provides that the bids that will be evaluated *may include*

the criteria listed, meaning other criteria could be included, and the bids *shall set forth* the actual criteria to be used. Therefore, the actual criteria would be listed and there would be no doubt as to the precise criteria to be evaluated.

17. ABC has also requested attorney's fees in its motion for summary relief. ABC did not prevail on its challenges that the Procurement Code did not permit the use of competitive sealed proposals on construction contracts; whether Article 3, Section 22 of the Pennsylvania Constitution required the use of competitive sealed proposals; whether DGS followed rulemaking procedures in implementing its policy determination; and whether the RFP process could be used on contracts for SSHE buildings. The only issue on which it was successful was whether DGS' determination that the use of competitive sealed bidding was either not practicable nor advantageous was improper. This is the normal type of review of an agency action that does not justify the award of counsel fees.

### ORDER

AND NOW, this *19th* day of *May*, 2010, the motion for summary relief filed by the PA Associated Builders and Contractors, Inc. is granted on its claim that competitive sealed proposals used in the renovation of the Foster Union Building at Cheyney University was not in accord with Section 513 of the Procurement Code, 62 Pa.C.S. § 513. No other relief can be granted on that claim because the project has been built. All other claims set forth in its motion for summary relief are denied. The cross-motion for summary relief filed by the Commonwealth, Department of General Services, is granted except that the competitive sealed proposals used in the renovation of the Foster Union Building at Cheyney University was in accordance with Section 513 of the Procurement Code, 62 Pa.C.S. 513, which is denied. Its request to dismiss for mootness is denied. The request for attorney's fees by the PA Associated Builders and Contractors, Inc. is denied.