J-A34013-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BANK OF AMERICA, N.A. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PAUL S. GALANTI AND GRACE D. GALANTI A/K/A GRACE P. GALANTI | |
| APPEAL OF: GRACE D. GALANTI | No. 1021 MDA 2015 |

Appeal from the Order June 1, 2015
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-2571

BEFORE: PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY PANELLA, J. **FILED MARCH 01, 2016**

Appellant, Grace D. Galanti, appeals from the order entered June 1, 2015, in the Court of Common Pleas of Berks County, which granted summary judgment in favor of Appellee, Bank of America, N.A ("the Bank"). No relief is due.

We take the facts of this matter from the trial court's Rule 1925(a) opinion filed July 27, 2015.

> On September 10, 2004, Julie Chapman, agent under power of attorney for Paul [S. Galanti ("Mr. Galanti")], executed a note for $333,700.00. Also on September 10, 2004, Ms. Chapman, as agent for [Mr. Galanti] and also as agent for [the Appellant], executed a purchase money Mortgage on the property at 3197 West Philadelphia Avenue, Oley, PA 19547. The Mortgage is recorded in the Office of the Recorder of Deeds in Book 4156, Page 466. A copy of [the] Power of Attorney to Buy/Mortgage, executed on August 30, 2004, is recorded in the Office of the Recorder of Deeds at Volume 4156, Page 459 and is attached as an exhibit to several of Bank's filings in this action.

The February 25, 2013 Complaint alleged that [Appellant and Mr. Galanti] defaulted under the Mortgage for failing to make payments due December 1, 2010 and each month thereafter. The complaint also set forth the amount due on the mortgage with a breakdown for principal balance, interest, late charges, property inspections, title costs, and escrow deficits. Although Act 6 does not apply to this action due to the mortgage amount[] exceeding the dollar amount set in the statute, the [Bank] alleged service of the Act 6 and Act 91 notices. The Complaint was served on the [Appellant and Mr. Galanti] on February 28, 2013.

On March 20, 2013, [Mr. Galanti] filed Preliminary Objections arguing that the doctrine of "in custodial legis" warranted dismissal of the Complaint because of the [couple's] impending divorce action. On April 9, 2013, [the] Bank filed an answer citing case law that a matrimonial court has no authority to interfere with a mortgage foreclosure action and that the divorce proceedings did not bar the foreclosure action. After argument on May 30, 2013, the [c]ourt stayed this action and scheduled a hearing for October 21, 2013 for determination of whether the stay should be lifted despite pendency of the equitable distribution matter. Following this hearing, the [c]ourt ordered that the stay remain in place until January 6, 2014. As of January 6, 2014, the stay was lifted, and [the] Bank was authorized to proceed with the foreclosure action, effectively dismissing [Mr. Galanti's] preliminary objection because equitable distribution in the divorce was still pending.

On January 14, 2014, [Appellant] filed an Answer and New Matter containing affirmative defenses to the Complaint. [Appellant] alleged that [Mr. Galanti's] "attorney-in-fact" signed the Note on his behalf alone. She further averred that this agent also signed the Mortgage as her agent "—a claim that has no basis within the record and cannot be sustained, Bank of America, N.A. cannot produce any document evidencing [Appellant's] assent to either the mortgage or note, or to anyone serving as her 'attorney-in-fact' or 'agent.'" Answer, paragraph 3. [Appellant] averred the mortgage was invalid and therefore could not be in default. She also listed a series of legal doctrines and conclusions of law, without factual support, as affirmative defenses.

Contemporaneously with the Answer, [Appellant] also filed a Motion for Judgment on the Pleadings. [Appellant] again

argued that the Note was executed by [Mr. Galanti's] agent on his behalf alone and that the Bank "cannot produce any document evidencing [her] assent to either the mortgage or note, or to anyone serving as her 'attorney-in-fact' or 'agent' who would have been authorized to assent on her behalf." Motion, paragraph 6. The Motion again listed unsupported conclusions of law as affirmative defenses to the action. Argument on the Motion was scheduled for March 19, 2014.

On February 24, 2014, [the] Bank filed its Response to [Appellant's] Motion for Judgment on the Pleadings. [The] Bank argued that the pleadings were not yet closed because it was not served with [Appellant's] Answer Containing New Matter and Affirmative Defenses and it intended to file a reply thereto. [The] Bank also responded that [Appellant] had executed a power of attorney in the State of Washington, which is recorded in the Office of the Recorder of Deeds and designates Julie Chapman as her agent to purchase, mortgage, or otherwise acquire real property. A copy of the power of attorney was attached to the Response.

On March 4, 2014, [the] Bank filed its Reply to New Matter and Affirmative Defenses. [The] Bank noted the Mortgage is recorded in the Office of the Recorder of Deeds, as is [Appellant's] Power of Attorney to Buy/Mortgage, copies of which were attached to the Reply. The Reply further averred the Note is not relevant to this cause of action because [the] Bank is pursuing only an *in rem* action against the property, and not suing [Appellant and Mr. Galanti] personally for a money judgment. [The] Bank also denied the affirmative defenses as conclusions of law and further responded that its Complaint fully complies with the requirements for a foreclosure complaint as set forth in Pa.R.C.P. 1147.

On March 19, 2014, the [c]ourt denied [Appellant's] Motion for Judgment on the Pleadings. On December 8, 2014, a default judgment was entered against [Mr. Galanti].

On February 26, 2015, [the] Bank filed its Motion for Summary Judgment against [Appellant], supporting brief, and certificate of service. [The] Bank alleged that no material issues of fact were in dispute and that [Appellant], in her answer to the Complaint, effectively admitted all of the allegations in the Complaint. [The] Bank urged that [Appellant's] New Matter consisted of conclusions of law unsupported by facts. [The] Bank

argued that the law requires the non-moving party to set forth specific facts demonstrating a genuine issue for trial in order to survive summary judgment, and [Appellant] had not done so.

[Appellant] filed her Answer in Opposition to Motion for Summary Judgment on March 26, 2015. She averred that [the] Bank had not complied with all requirements to proceed to foreclosure, that she was entitled to rescission, that [the] Bank is estopped or barred by laches from proceeding, and that [the] Bank discharged further obligation under the Mortgage. She continued to argue that [the] Bank could not produce anything evidencing her assent to the Mortgage, causing the Mortgage to be invalid and therefore incapable of being in default. She argued the Note was not due and payable in full until October 1, 2034. She argued that [the] Bank should have pursued [Mr. Galanti] for any default under the Note, especially since he was negotiating the release and acquisition of other loans and looting the marital estate. [Appellant] further averred that [the] Bank would not communicate with her because she was not party to the Note, and she had no idea what [Mr. Galanti] paid against the loan. Absent from her argument was any allegation that she attempted to any discovery or otherwise attempted to compel communication and information sharing.

[Appellant] attached an Affidavit to her Answer to Summary Judgment. She stated that she did not sign the Note or Mortgage and that she relied on [Mr. Galanti] to honor his obligations under the Note. She averred attempts to communicate with [the] Bank, who refused to discuss the Mortgage or any assistance to which she might have been entitled … because she was not on the Note. She averred that [Mr. Galanti] was enjoying the benefits of other loans and business dealings, which [the] Bank could and should have attached. She also averred that $50,000 of the initial purchase monies for the property came from her father.

The first ten pages of [Appellant's] brief in opposition to summary judgment portrayed a story about the [couple's] relationship and [Mr. Galanti's] business dealings and divorce planning. She argued that all prerequisites for foreclosure have not been met and that notices were set only to [Mr. Galanti]. She believed that [Mr. Galanti's] business loans, income, and valuations had an impact on [the] Banks' rights and duties with respect to the Note and Mortgage. She argued that she justifiably relied on [the] Bank to hold [Mr. Galanti] to his

obligations under the Note and because [the] Bank did not properly pursue [Mr. Galanti] for his failure to meet his obligations, [the] Bank is barred by estoppel and laches from foreclosing on her surety interest. She further argued that [the] Bank's inaction *de facto* nullified the Note and discharged the Mortgage. Finally, she argued that summary judgment would be inappropriate while the equitable distribution issue of the parties' divorce remained pending.

On May 6, 2015, [the] Bank filed a praecipe for argument with a requested argument date of June 1, 2015.

On May 11, 2015, [Appellant] filed a supplemental brief in opposition to summary judgment. In addition to previous arguments, [Appellant] believed that a recent Third Circuit opinion, ***Kaymark v. Bank of America, N.A.; Udren Law Offices, P.C.***, 783 F.3d 168 (3d Cir., April 7, 2015), was applicable and relevant. She argued that fair debt collection laws required dismissal of the Complaint because fees not yet earned and costs not yet or improperly incurred were requested in the Complaint….

On May 28, 2015, [the] Bank filed its Supplemental Brief in Support of its Motion. [The] Bank argued that the [couple's] divorce is not a defense to foreclosure, and [Appellant] is not entitled to rescission. [The] Bank further argued that the Note is not relevant to an *in rem* foreclosure action and that ***Kaymark*** did not apply because [the] Bank did not seek to recover any unearned fees.

After argument on June 1, 2015, the [c]ourt entered an order granting summary judgment. On June 9, 2015, [Appellant] filed a Notice of Appeal. After being ordered to do so, [Appellant] filed a Concise Statement of Matters Complained of on Appeal….

Trial Court Opinion, 7/27/15 at 1-6.

Appellant raises the following issues for our review.

A. Did Appellant present evidence that BOA had an affirmative duty to pursue Mr. Galanti to pay his debt?

B. Did Appellant present evidence that BOA's inexcusable delay in pursuing remedy under the Note renders Laches applicable?

C. Is Appellant a "mere surity" [sic] and, thus, entitled to Rescission?

D. Did Appellant "affirmatively set forth specific facts that demonstrate that [BOA] has listed in its Complaint fees or costs that it has not earned or accrued."

Appellant's Brief at 3.

We review a challenge to the entry of summary judgment as follows.

[We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. *See* Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***E.R. Linde Const. Corp. v. Goodwin***, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted).

In actions for *in rem* foreclosure due to the defendant's failure to pay a debt, summary judgment is proper where the defendant admits that he had failed to make payments due and fails to sustain a cognizable defense to the plaintiff's claim. ***See Gateway Towers Condo. Ass'n v. Krohn***, 845 A.2d 855, 858 (Pa. Super. 2004); ***First Wis. Trust. Co. v. Strausser***, 653 A.2d 688, 694 (Pa. Super. 1995).

We have reviewed Appellant's issues raised on appeal, along with the briefs of the parties, the certified record, and the applicable law. Having determined that the Honorable Linda K.M. Ludgate's July 27, 2015 opinion ably and comprehensively disposes of the issues raised on appeal, with appropriate reference to the record and without legal error, we will affirm on the basis of that opinion. **See** Trial Court Opinion, 7/27/15 at 6-14 (finding, *inter alia*: 1) Appellant failed to cite a provision of the Mortgage or the Note, or any other communication by the Bank, in support of her claim that the Bank was obliged to pursue Mr. Galanti personally to pay his debt and not exercise its rights under the Mortgage; 2) Appellant's failure to allege inexcusable delay was fatal to a laches defense; 3) Appellant did not have the right to rescind the Mortgage more than eight years after the execution of the Mortgage and after the filing of the Complaint; and 4) the Third Circuit's decision in **Kaymark** was inapplicable to the instant mortgage foreclosure case.[1]

---

[1] In **Kaymark**, the mortgagor initiated a class action against the mortgagee and the law firm that initiated the foreclosure proceedings. The Mortgagor alleged that the foreclosure Complaint listed certain not-yet-incurred fees as due and owing in violation of, *inter alia*, the Fair Debt Collection Practices Act (FDCPA) and the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA). **Kaymark**, 783 F.3d at 171-172. Appellant's reliance upon the **Kaymark** decision is entirely misplaced, as that decision provides no defense to a mortgage foreclosure action. We additionally note, as does the trial court, that Appellant fails to allege with any particularity which fees listed in the foreclosure complaint she is contesting.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>3/1/2016</u>

BANK OF AMERICA, N.A.,       : IN THE COURT OF COMMON PLEAS
          Plaintiff            : BERKS COUNTY, PENNSYLVANIA
                       : CIVIL ACTION
      v.                   :
                       : No.    13-2571
PAUL S. GALANTI and GRACE D.    :
GALANTI A/K/A GRACE P. GALANTI,   :
          Defendants        : LUDGATE, S.J.

Chrisovalante P. Fliakos/Matthew G. Brushwood, Attorneys for Plaintiff
Joseph A. O'Keefe, Attorney for Defendant Grace Galanti
Eleni Dimitriou Geishauser, Attorney for Defendant Paul S. Galanti

---

**OPINION**            **LUDGATE, S.J.**           **Dated:  July 27, 2015**

On February 25, 2013, Bank of America, N.A. (hereinafter "Bank") filed a Complaint in

Mortgage Foreclosure against Defendants, Paul and Grace Galanti. Judgment by default was

entered against Defendant Paul Galanti (hereinafter "Paul"). Following entry of summary

judgment against Defendant Grace Galanti (hereinafter "Grace"), she filed an appeal. This

Opinion is written in support of the Court's entry of summary judgment.

FACTUAL AND PROCEDURAL HISTORY

On September 10, 2004, Julie Chapman, agent under power of attorney for Paul,

executed a Note for $333,700.00. Also on September 10, 2004, Ms. Chapman, as agent for Paul

and also as agent for Grace, executed a purchase money Mortgage on the property at 3197 West

Philadelphia Avenue, Oley, PA 19547 to secure the Note. The Mortgage is recorded in the

Office of the Recorder of Deeds in Book 4156, Page 466. A copy of Grace's Power of Attorney

to Buy/Mortgage, executed on August 30, 2004, is recorded in the Office of the Recorder of

Deeds at Volume 4156, Page 459 and is attached as an exhibit to several of Bank's filings in this

1

action.

The February 25, 2013 Complaint alleged that Defendants defaulted under the Mortgage by failing to make payments due December 1, 2010 and each month thereafter. The Complaint also set forth the amount due on the mortgage with a breakdown for principal balance, interest, late charges, property inspections, title costs, and escrow deficits. Although Act 6 does not apply to this action due to the mortgage amount's exceeding the dollar amount set in the statute, the Plaintiff alleged service of the Act 6 and Act 91 notices. The Complaint was served on the Defendants on February 28, 2013.

On March 20, 2013, Paul filed Preliminary Objections arguing that the doctrine of "in custodial legis" warranted dismissal of the Complaint because of the Defendants' pending divorce action. On April 9, 2013, Plaintiff filed an answer citing case law that a matrimonial court has no authority to interfere with a mortgage foreclosure action and that the divorce proceedings did not bar the foreclosure action. After argument on May 30, 2013, the Court stayed this action and scheduled a hearing for October 21, 2013 for determination of whether the stay should be lifted despite pendency of the equitable distribution matter. Following this hearing, the Court ordered that the stay remain in place until January 6, 2014. As of January 6, 2014, the stay was lifted, and Bank was authorized to proceed with the foreclosure action, effectively dismissing Paul's preliminary objection because equitable distribution in the divorce was still pending.

On January 14, 2014, Grace filed an Answer and New Matter containing affirmative defenses to the Complaint. Grace alleged that Paul's "attorney-in-fact" signed the Note on his behalf alone. She further averred that this agent also signed the Mortgage as her agent "– a claim that has no basis within the record and cannot be sustained, Bank of America, N.A. cannot

2

produce any document evidencing Grace Galanti's assent to either the mortgage or note, or to anyone serving as her 'attorney-in-fact' or 'agent.'" Answer, paragraph 3. Grace averred the mortgage was invalid and therefore could not be in default. She also listed a series of legal doctrines and conclusions of law, without factual support, as affirmative defenses.

Contemporaneously with the Answer, Grace also filed a Motion for Judgment on the Pleadings. Grace again argued that the Note was executed by Paul's agent on his behalf alone and that the Bank "cannot produce any document evidencing [her] assent to either the mortgage or note, or to anyone serving as her 'attorney-in-fact' or 'agent' who would have been authorized to assent on her behalf." Motion, paragraph 6. The Motion again listed unsupported conclusions of law as affirmative defenses to the action. Argument on the Motion was scheduled for March 19, 2014.

On February 24, 2014, Bank filed its Response to Grace's Motion for Judgment on the Pleadings. Bank argued that the pleadings were not yet closed because it was not served with Grace's Answer Containing New Matter and Affirmative Defenses and it intended to file a reply thereto. Bank also responded that Grace executed a power of attorney in the State of Washington, which is recorded in the Office of the Recorder of Deeds and designates Julie Chapman as her agent to purchase, mortgage, or otherwise acquire real property. A copy of the power of attorney was attached to the Response.

On March 4, 2014, Bank filed its Reply to New Matter and Affirmative Defenses. Bank noted the Mortgage is recorded in the Office of the Recorder of Deeds, as is Grace's Power of Attorney to Buy/Mortgage, copies of which were attached to the Reply. The Reply further averred the Note is not relevant to this action because Bank is pursing only an *in rem* action against the property and not suing the Defendants personally for a money judgment. Bank also

3

denied the affirmative defenses as conclusions of law and further responded that its Complaint fully complies with the requirements for a foreclosure complaint as set forth in Pa.R.C.P. 1147.

On March 19, 2014, the Court denied Grace's Motion for Judgment on the Pleadings.

On December 8, 2014, a default judgment was entered against Paul.

On February 26, 2015, Bank filed its Motion for Summary Judgment against Grace, supporting brief, and certificate of service. Bank alleged that no material issues of fact were in dispute and that Grace, in her answer to the Complaint, effectively admitted all of the allegations in the Complaint. Bank argued that Grace's New Matter consisted of conclusions of law unsupported by facts. Bank argued that the law requires the non-moving party to set forth specific facts demonstrating a genuine issue for trial in order to survive summary judgment, and Grace had not done so.

Grace filed her Answer in Opposition to Motion for Summary Judgment on March 26, 2015. She averred that Bank had not complied with all requirements to proceed to foreclosure, that she was entitled to rescission, that Bank is estopped or barred by laches from proceeding, and that Bank discharged further obligation under the Mortgage. She continued to argue that Bank could not produce anything evidencing her assent to the Mortgage, causing the Mortgage to be invalid and therefore incapable of being in default. She argued the Note was not due and payable in full until October 1, 2034. She argued that Bank should have pursued Paul for any default under the Note, especially since he was negotiating the release and acquisition of other loans and looting the marital estate. Grace further averred that Bank would not communicate with her because she was not party to the Note, and she had no idea what Paul paid against the loan. Absent from her argument was any allegation that she attempted any discovery or otherwise attempted to compel communication and information sharing.

4

Grace attached an Affidavit to her Answer to Summary Judgment. She stated that she did not sign the Note or Mortgage and that she relied on Paul to honor his obligations under the Note. She averred attempts to communicate with Bank, who refused to discuss the Mortgage or any assistance to which she might have been entitled with her because she was not on the Note. She averred that Paul was enjoying the benefits of other loans and business dealings, which Bank could and should have attached. She also averred that $50,000 of the initial purchase monies for the property came from her father.

The first ten pages of Grace's brief in opposition to summary judgment portrayed a story about the Defendants' relationship and Paul's business dealings and divorce planning. She argued that all prerequisites for foreclosure have not been met and that notices were sent only to Paul. She believed Bank did not properly service the mortgage. She argued that she is entitled to rescission. She believed that Paul's business loans, income, and valuations had an impact on Bank's rights and duties with respect to the Note and Mortgage. She argued that she justifiably relied on Bank to hold Paul to his obligations under the Note and because Bank did not properly pursue Paul for his failure to meet his obligations, Bank is barred by estoppel and laches from foreclosing on her surety interest. She further argued that the Bank's inaction *de facto* nullified the Note and discharged the Mortgage. Finally, she argued that summary judgment would be inappropriate while the equitable distribution issue of the parties' divorce remained pending.

On May 6, 2015, Bank filed a praecipe for argument with a requested argument date of June 1, 2015.

On May 11, 2015, Grace filed a supplemental brief in opposition to summary judgment. In addition to previous arguments, Grace believed that a recent Third Circuit opinion, *Kaymark v. Bank of America, N.A.; Udren Law Offices, P.C.*, 783 F.3d 168 (3rd Cir., April 7, 2015),

5

was applicable and relevant. She argued that fair debt collection laws required the dismissal of the Complaint because fees not yet earned and costs not yet or improperly incurred were requested in the Complaint. She argued that because the Bank has not done equity, it cannot ask for equity.

On May 28, 2015, Bank filed its Supplemental Brief in Support of its Motion. Bank argued that the Defendants' divorce is not a defense to foreclosure, and Grace is not entitled to rescission. Bank further argued that the Note is not relevant to an *in rem* foreclosure action and that *Kaymark* does not apply because Bank did not seek to recover any unearned fees.

After argument on June 1, 2015, the Court entered an order granting summary judgment. On June 9, 2015, Grace filed a Notice of Appeal. After being ordered to do so, Grace filed a Concise Statement of Matters Complained of on Appeal, wherein she argues that the Court "ignored, failed to address, or consider binding precedent" or her New Matter and Affirmative Defenses, which are repeated in the Concise Statement.

LEGAL ANALYSIS

Summary judgment serves the purpose of promoting judicial economy by eliminating cases prior to trial if a party cannot make out a claim or defense. **See** *Miller v. Sacred Heart Hosp.*, 753 A.2d 829 (Pa.Super. 2000). Summary judgment is appropriate when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Hovis v. Sunoco, Inc.*, 64 A.3d 1078, 1081 (Pa.Super. 2013) (citation omitted). The moving party bears the burden of clearly demonstrating that there are no genuine issues of material fact. *Stimmler v. Chestnut Hill Hosp.*, 981 A.2d 145, 154 (Pa. 2009) (citations omitted). The nonmoving party may not rest upon the pleadings but must affirmatively set forth specific facts that demonstrate a genuine issue for trial. Pa.R.C.P. 1035.3

6

Furthermore, averments in a pleading to which a response is required are deemed admitted if not denied specifically or by necessary implication. **Pa.R.C.P. 1029(b).** A general denial is effectively an admission for purposes of summary judgment. *Id.*

Complaint states a claim for which relief can be granted

Pursuant to **Pa.R.C.P. 1147** a mortgage foreclosure complaint must set forth the parties to and the date of the mortgage; a description of the mortgaged land; the names, addresses, and interest of the defendants; a specific averment of default; an itemization of the amounts due; and a demand for judgment for the amount due. Bank's Complaint meets all of these requirements – it establishes the Defendants' creation of a mortgage of their property in favor of Bank, states a default under the mortgage by the Defendants' failure to make monthly payments due December 1, 2010 and thereafter, states the damages, and makes a claim for relief in the form of an *in rem* judgment of foreclosure. Incidentally, there is no requirement in **Rule 1147** to make any allegation about or to produce the promissory note that the mortgage secures.

Grace's assent to the Mortgage

Grace's argument that there are no indicia of her assent to the Mortgage is incredible. She executed a power of attorney that specifically authorized the transaction:

> I, Grace D. Galanti, (principal) duly constitute and appoint Julie Chapman my true Agent for me in my name, place and stead, to enter into and take possession of all lands, messuages, tenements, hereditaments and real estate whatever, for the following limited purpose:
> To purchase the same or any part thereof, for such sum or price and upon such terms as he/she feels appropriate.
> To make, execute, acknowledge and deliver any documents, deeds, mortgages or instruments necessary or appropriate in the sole discretion of my Agent, in connection with the sale or mortgage of 3197 W. Philadelphia Ave., Oley PA 19547.
> * * *
> By this Power of Attorney I hereby give and grant my Agent, my full and complete authority to act with respect to said transaction as I might do myself if personally present and to do all lawful acts requisite for effectuating the said

7

purchase or mortgage; <u>and I hereby ratify and confirm all that my Agent shall do therein by virtue of these presents</u>.

Power of Attorney to Buy/Mortgage, August 30, 2004, recorded as aforesaid (emphasis added). This Power of Attorney has been referenced by and attached to several of Bank's filings, but at no time did Grace allege that the Power of Attorney was invalid or revoked prior to the agent's execution of the Mortgage. Instead, Grace has disingenuously argued that <u>she</u> did not sign the Mortgage or Note.

### Estoppel

"The essential elements of estoppel are 'an inducement by the party sought to be estopped to the party who asserts the estoppel to believe certain facts to exist – and the party asserting the estoppel *acts in reliance on that belief.*'" ***Westinghouse Elec. Corp./CBS v. W.C.A.B. (Korach)*, 584 Pa. 411, 422, 883 A.2d 579, 586 (2005),** quoting *Blofsen v. Cutaiar,* **460 Pa. 411, 333 A.2d 841, 844 (1975)** (emphasis in original).

Grace argued that, as a surety, she "absolutely relied upon Bank . . . to hold Paul . . . to his obligations under the Note." Grace's brief opposing summary judgment, p. 23. She seems to think that Bank had an obligation to pursue him for monies he "looted" from the Defendants' marital estate. Nowhere did she cite a provision of the Mortgage or the Note that Bank had an affirmative duty to pursue Paul personally to pay his debt, which would have required the filing of a separate civil action, rather than pursue foreclosure. Nowhere did Grace cite a specific communication or action that Bank induced her to reasonably believe that Bank would pursue Paul personally and not exercise its rights under the Mortgage. The Bank's concern was that it received the payments that it was due, and, failing such payments, mortgage foreclosure provided a direct and typically efficient means of enforcing payment. Finally, there was no alleged inaction by Bank that could have reasonably caused Grace to reasonably believe that the

8

ongoing default was forgiven. See below discussion on laches. Grace has not affirmatively produced any facts that show that she was induced in any way by Bank to believe that Bank would not pursue foreclosure.

Laches

"Laches arises when a defendant's position or rights *are so prejudiced* by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him." *Jacobs v. Halloran*, 551 Pa. 350, 356, 710 A.2d 1098, 1102 (1998) (citations omitted, emphasis in original).

Grace does not allege inexcusable delay. Furthermore, pursuant to 42 Pa.C.S.A. § 5529, ("an action upon an instrument in writing under seal must be commenced within 20 years"), Bank had 20 years from December 1, 2010 to commence this action because the Mortgage was executed under seal. Lastly, the prejudice that Grace alleged was the result of Bank's perceived failure to prosecute Paul personally, not the passage of time and delay. The doctrine of laches does not apply to this action.

Right of Rescission

[4][I]n the case of any consumer credit . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later," 15 U.S.C.A. § 1635(a); however, this section does not apply to a residential mortgage transaction. 15 U.S.C.A. § 1635(e). Even when 15 U.S.C.A. § 1635 applies to a transaction, the right of rescission expires

9

three years after the consummation of the transaction even if required information, forms, and disclosures have not been provided to the obligor. **15 U.S.C.A. § 1635(f).**

By the terms of § 1635, Grace did not have the ability to rescind the Mortgage, certainly not after the filing of the Complaint, which came more than eight years after execution of the Mortgage, nor did she allege an attempt to rescind the Mortgage. Bank's foreclosure action is not barred by 15 U.S.C.A. § 1635. Grace did not specifically allege or argue any other statutory right of rescission.

In arguing that the Mortgage is properly rescinded under common law, Grace's brief cited *First Federal Sav. and Loan Ass'n of Pittston v. Reggie*, 376 Pa.Super. 346, 546 A.2d 62 (1988) as a case in which a surety was discharged because of a lender's improper subordination of liens and impairment of the collateral. In *Reggie*, the defendants pledged their home as collateral so that their son and daughter-in-law would qualify for a mortgage to buy a home, the "Spring property." The following year, the defendants placed yet another lien against their home to help their son and daughter-in-law buy and borrow against another property, the "Luzerne property." Thereafter, the son and daughter-in-law refinanced the Luzerne property mortgage into their names only and used the Spring property as additional collateral, removing the defendants' latest lien against their home. The lender foreclosed on the refinanced mortgage and bought both of the Luzerne and Spring properties at the sheriff's sale. After selling these properties, the lender applied the proceeds to the combined indebtedness of the two properties, effectively satisfying the Luzerne debt, but causing a deficiency on the Spring property debt and leaving the defendants exposed on the first lien against the Spring property as also secured by their home. Because of this deficiency exposure, the defendants gave the lender another mortgage against their home. The Court determined that the lender should have applied the

10

Spring property sale proceeds to the first lien against the property, not the second/junior lien and Luzerne property lien. Had the lender applied the Spring property proceeds correctly, the first lien, for which the defendants served as sureties, would have been nearly if not completely satisfied. The Court found the mortgage that the defendants gave to secure the deficiency was fraudulently induced and discharged the mortgage.

In the instant case, Grace alleges that Paul gave Bank a second mortgage against their home for a commercial purpose and that Bank later discharged this mortgage without any consideration of the primary mortgage. Grace did not provide a copy of this mortgage or give a Recorder of Deeds reference to support its existence, validity, or discharge. Grace did not allege being a party to the loan or second mortgage. She did not even aver that the discharge of this mortgage was in any way improper except that it did not "consider" the primary mortgage – no fraud was specifically alleged. See **Pa.R.C.P. 1019** (fraud "shall be averred with particularity").

Viewing the alleged existence of the second mortgage in a light most favorable to Grace, the Court still does not have evidentiary support that its commercial purpose was not achieved nor that its discharge was the product of improper loan subordination or other fraudulent activity. Additionally, the primary mortgage at issue was not a commercial mortgage; therefore, it should not be expected that commercial proceeds would be used to first satisfy the primary mortgage and not the secondary mortgage securing the commercial loan. Finally, if Paul had money to make payments on either of the loans, he would have been the one with control to pay whichever loan he wanted – the Bank would not have properly dictated which loan to pay first. To further expound on this point by following the logic used by the *Reggie* Court in its footnote 3, had the second mortgage been secured from another creditor, there would be no argument that discharge or satisfaction of the second lien by the second creditor somehow impaired the first. On the

11

other hand, if a sale of the collateral occurred, then priority of each mortgage would be a concern, but that is not the scenario here.

It should also be noted that discharge of the second mortgage inured to Grace's benefit because a cloud on her title to the property was removed. It is disingenuous to argue that Grace is a "mere surety" when she is a beneficiary of the purchase money note and mortgage that has allowed her to purchase and reside in the property securing the debt. There simply were not sufficient specific facts affirmatively set forth to raise a genuine issue that the discharge of the second mortgage somehow affected the validity of the first so as to justify rescission or discharge.

Standing

Aside from the above arguments that the mortgage is invalid or unenforceable, Grace made no other arguments regarding Bank's standing. As the mortgagee, Bank is a real party in interest aggrieved by Defendants' failure to pay their debt; therefore, Bank has standing.

Fair Credit Extension Uniformity Act

"This act establishes what shall be considered unfair methods of competition and unfair or deceptive acts or practices with 'regard to the collection of debts." **73 P.S. § 2270.2.** Grace made no arguments about how this act allegedly barred the foreclosure action, nor did the Court perceive any violations of the act.

Divorce

Upon the commencement of a divorce action, all marital property is placed under the jurisdiction and wardship of the family court – the property is in *custodia legis*. *Fidelity Bank v. Carroll*, 416 Pa.Super. 9, 14, 610 A.2d 481, 483 (1992). Such property is not subject to attachment by judicial liens. *Id.* "Marital property does not include . . . [p]roperty to the extent

12

to which the property has been mortgaged or otherwise encumbered in good faith for value prior to the date of final separation." 23 Pa.C.S.A. § 3501(a)(7). "To the extent that a secured creditor has acquired a bona fide interest in property owned by spouses, a matrimonial court does not have power to impair the creditor's security." *Kronz v. Kronz*, 393 Pa.Super. 227, 232, 574 A.2d 91, 94 (1990).

The Mortgage in this case was executed prior to the Defendants' separation; therefore, the encumbered property is not marital, is not subject to the jurisdiction and wardship of the court, and is not protected from attachment by judicial liens. Just as in *Kronz*, "[t]he rights of the mortgagee bank in this real estate were contractual; they did not depend upon a continuing marriage of the mortgagors or upon the distribution of the real estate between them upon divorce." *Id.* at 234, 574 A.2d at 95. Bank's foreclosure action was not barred by the divorce.

### *Kaymark*

In *Kaymark*, 783 F.3d 168 (3rd Cir., April 7, 2015), the mortgagor filed a claim against the mortgagee and its counsel alleging that the mortgagee's mortgage foreclosure complaint listed certain fees that had not yet been earned and costs that had not yet been incurred as due and owing. The Court determined that the mortgagor sufficiently pled an actionable misrepresentation under the Fair Debt Collection Practices Act.

In this action, Grace has not affirmatively set forth specific facts that demonstrate that Bank has listed in its Complaint fees or costs that it has not earned or accrued. *Kaymark* is not applicable to this case.

### CONCLUSION

Bank complied with all applicable rules of civil procedure in the filing of its Complaint and Motion for Summary Judgment. The Complaint sufficiently identified the parties, the nature

13

of the claim, and the calculation of damages. There is no fatal defect or irregularity in the record. Grace did not affirmatively set forth specific facts that demonstrated a genuine issue for trial and did not plead a meritorious defense to the allegations contained in the Complaint. The Court properly granted summary judgment.

For these reasons, the Court suggests that its June 1, 2015 Order granting summary judgment be affirmed.

NOTICE IS HEREBY GIVEN OF THE ENTRY OF THIS ORDER OR DECREE PURSUANT TO RULE P.C.P. 236 YOU ARE NOTIFIED THAT THIS ORDER/DOCUMENT HAS BEEN FILED IN THE PROTHONOTARY'S OFFICE OF BERKS COUNTY AND THIS IS AN EXTRACT FROM THE RECORD OF SAID COURT CERTIFIED THIS 28TH DAY OF July 20 15
Marianne R. Sutton, Prothonotary
Michele Brick Deputy

BY THE COURT:

_____ J.

Distribution: Prothonotary; Chrisovalante P. Fliakos, Esq./ Matthew G. Brushwood, Esq.; Joseph A. O'Keefe, Esq.; Eleni Dimitriou Geishauser, Esq.

RECEIVED PROTHONOTARY'S OFFICE
2015 JUL 27 P 2:39
BERKS COUNTY, PA
MARIANNE R. SUTTON
PROTHONOTARY

14